MITCHELL KAMIN (SBN 202788)
mkamin@cov.com
AARON LEWIS (SBN 284244)
alewis@cov.com
BRITTANY BENJAMIN (SBN 323968)
bbenjamin@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
Facsimile: (424) 332-4749

CASSANDRA STUBBS (SBN 218849)
cstubbs@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
201 W. Main St., Suite 402
Durham, NC 27701
Telephone: (919) 682-5659
Facsimile: (919) 682-5961

*Attorneys for Plaintiffs*

[Additional Counsel continued on next page]

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MELISSA AHLMAN, DANIEL KAUWE, MICHAEL SEIF, JAVIER ESPARZA, PEDRO BONILLA, CYNTHIA CAMPBELL, MONIQUE CASTILLO, MARK TRACE, CECIBEL CARIDAD ORTIZ, and DON WAGNER, on behalf of themselves and all others similarly situated, <br><br>     Plaintiffs, | Case No.: 8:20-cv-835-JGB-SHK <br><br> **BRIEF IN SUPPORT OF MOTION FOR PROVISIONAL CLASS CERTIFICATION** <br><br> **Date: May 18, 2020** <br> **Time: 9:00 a.m.** <br> **Hon. Jesus G. Bernal** |

v.

DON BARNES, in his official capacity as
Sheriff of Orange County, California; and
ORANGE COUNTY, CALIFORNIA

Defendant.

[Additional Counsel continued from first
page]

STACEY GRIGSBY*
sgrigsby@cov.com
AMIA TRIGG** (SBN 282890)
atrigg@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5906

OLIVIA ENSIGN
oensign@aclu.org
CRISTINA BECKER
cbecker@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
201 W. Main St., Suite 402
Durham, NC 27701
Telephone: (919) 682-5659
Facsimile: (919) 682-5961

JOHN WASHINGTON (SBN
315991)
jwashington@sshhlaw.com
SCHONBRUN, SEPLOW,
HARRIS, HOFFMAN &
ZELDES LLP
11543 W. Olympic Blvd.
Los Angeles, CA 90064
Telephone: (310) 399-7040
Facsimile: (310) 399-7040

PETER ELIASBERG (SBN
189110)
peliasberg@aclu.org
AMERICAN CIVIL
LIBERTIES FUND OF
SOUTHERN CALIFORNIA
1313 W 8th St
Los Angeles, CA 90017
Telephone: (213) 977-9500

PAUL HOFFMAN (SBN
71244)
hoffpaul@aol.com
UNIVERSITY OF
CALIFORNIA, IRVINE
SCHOOL OF LAW CIVIL

CARL TAKEI
ctakei@aclu.org
SOMIL TRIVEDI
strivedi@aclu.org
CLARA SPERA
cspera@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 607-3300
Facsimile: (212) 607-3318

RIGHTS LITIGATION
CLINIC
401 E. Peltason Dr., Suite 1000
Irvine, CA 92687
Telephone: (949) 824-0066

ZOE BRENNAN-KROHN**
(SBN 324912)
zbrennan-krohn@aclu.org
AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION
Disability Rights Program
39 Drumm Street
San Francisco, CA 94111
Telephone: (415)-343-0769
Facsimile: (415) 255-1478

ATTORNEYS FOR PLAINTIFFS

*pro hac vice application forthcoming

**C.D. California admission application forthcoming

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................. 1

II.    SUMMARY OF RELEVANT FACTS ................................................... 3

III.   PLAINTIFFS' PROPOSED CLASSES ..................................... 8

IV.   NAMED PLAINTIFFS ....................................................... 10

V.    ARGUMENT........................................................................ 12

     A.    The Proposed Injunctive Relief Classes and Subclasses Meet the Requirements of Rule 23(a). ........................................... 12

          1.    Numerosity...................................................... 12

          2.    Commonality.................................................. 14

          3.    Typicality ...................................................... 16

          4.    Adequacy of Representation .................................... 17

     B.    The Proposed Classes and Subclasses Meet the Requirements of Rule 23(b)(2)................................................. 19

VI.   CONCLUSION........................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullah v. U.S. Sec. Assocs. Inc.*,
   731 F.3d 952 (9th Cir. 2013) ...................................................................... 14

*Alcantara v. Archambeault*,
   No. 3:20-cv-756 (DMS) (AHG), Dkt. No. 41 (S.D. Cal. May 1, 2020) .................. 3, 15

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) (*abrogated on other grounds by Johnson v.
   California*, 543 U.S. 499 (2005)) ................................................................. 15

*Carillo v. Schneider Logistics, Inc.*,
   No. 11-cv-8557, 2012 WL 556309 (C.D. Cal. Jan. 31, 2012) ...................................... 2

*In re Cooper Companies Inc. Securities Litigation*,
   254 F.R.D. 627 (C.D. Cal. 2009) ............................................................... 12, 13

*Disabilities Among Prison and Jail Inmates*,
   *2011-12,* U.S. Dep't of Justice, 1 (Dec. 2015),
   https://www.bjs.gov/content/pub/pdf/dpji1112.pdf; ............................................. 13

*Fraihat, v. U.S. Immigr. & Customs Enf't*,
   -- F. Supp. 3d --, No. EDCV 19-1546 (JGB) (SHK), 2020 WL 1932570
   (C.D. Cal. Apr. 20, 2020) 2020 WL 1932570 (C.D. Cal. Apr. 20, 2020) .... 2, 14, 15, 16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................... 18

*Hum v, Dericks*,
   162 F.R.D. 628 (D. Haw. 1995) ................................................................... 12

*Kincaid v. City of Fresno*,
   244 F.R.D. 597 (E.D. Cal. 2007) ................................................................. 12

*Lynch v. Rank*,
   604 F. Supp. 30 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984) ...................... 19

*Mays v. Dart*,
   --- F. Supp. 3d ---, 2020 WL 1812381 (N.D. Ill. Apr. 9, 2020) ................................ 3, 15

*Meyer v. Portfolio Recovery Assocs., LLC*,
   707 F.3d 1036 (9th Cir. 2012) ............................................................................... 2

*Nat'l Ass'n of Radiation Survivors v. Walters*,
   111 F.R.D. 595 (N.D. Cal. 1986)........................................................................ 14

*Nat'l Ctr. for Immigrants Rights, Inc. v. I.N.S.*,
   743 F.2d 1365 (9th Cir. 1984) .............................................................................. 2

*Orantes-Hernandez v. Smith*,
   541 F. Supp. 351 (C.D. Cal. 1982) .................................................................... 13

*Ortega-Melendres v. Arpaio*,
   836 F. Supp. 2d 959 (D. Ariz. 2011), *aff'd sub nom. Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) .............................................................................. 15

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ................................................................ 14, 16, 17

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ...................................................................... 16, 17

*Roman v. Wolf*,
   No. 5:20-cv-868 (TJH) (PHV) (C.D. Cal. Apr. 23, 2020), Dkt. No. 52 ........... 2, 14, 15

*Savino v. Souza*,
   No. 20-10617, 2020 WL 1703844 (D. Mass. Apr. 8, 2020) ................................ 3, 15

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*,
   559 U.S. 393 (2010)............................................................................................ 12

*State v. Cecibel Caridad Ortiz*,
   No. 18HF1511 (conviction date, Sept. 30, 2019).......................................... 11

*State v. Cynthia Marie Campbell*,
   No. 19NF2185 (conviction date, Mar. 13, 2020) .......................................... 11

*Tinsley v. Snyder*,
   922 F.3d 957 (9th Cir. 2019) ............................................................................. 17

*United States v. Don Wagner*,
   No. 90020298 (conviction date, Jan. 7, 2020)............................................... 11

iii

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) ................................................................. 20

*Wilson v. Williams*,
   No. 4:20-cv-00794, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020) ....................... 3, 15

*Zepeda Rivas v. Jennings*,
   --- F. Supp. 3d ---, 2020 WL 2059848 (N.D. Cal. Apr. 29, 2020) ........................ 3, 15

**Other Authorities**

Eighth Amendment .................................................................................. 17, 20

Fourteenth Amendment ............................................................................ 17, 20

BSCC, *County Jail Populations by Sentenced, Non-Sentenced and Offense
   Type for the Fourth Quarter of 2019* (Mar. 6, 2020),
   http://www.bscc.ca.gov/wp-content/uploads/Jail-Pop-Trends-Through-
   Q4-2019.pdf ........................................................................................ 13

Correctional and Detention Facilities (March 23, 2020),
   https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-
   correctional-detention.pdf ..................................................................... 3

Fed. R. Civ. P. 23(a)(2) ......................................................................... 14, 15

https://app.smartsheet.com/b/publish?EQBCT=82b29a92ea9a4a0ea7aa480f1
   287e137 ............................................................................................ 13

https://www.marionstar.com/story/news/local/2020/04/25/marion-prison-
   ohio-coronavirus-outbreak-seeping-into-larger-community/3026133001/ .................. 8

71 Mary J. Kane, *Fed. Prac. Proc. Civ.* § 1763 (3d ed. 2018) ............................... 15

Miriam Hernandez, *COVID-19 Infects More Than Half of Inmates at
   Terminal Island Prison in San Pedro* (Apr. 29, 2020, 11:03 PM),
   https://abc7.com/terminal-island-prison-coronavirus-covid19-bureau-of-
   prisons/6138903/("As ............................................................................ 7

OC Jails (May 8, 2020),
   https://www.ocsd.org/documents/sheriff/COVIDStats5.8.20.pdf ......................... 1, 7

Orange County Sheriff's Dep't, COVID-19 in OC Jails (Apr. 29, 2020),
   https://www.ocsd.org/documents/sheriff /COVIDStats4.29.20.pdf ........................ 7

Orange County Sheriff's Dep't, COVID-19 in OC Jails (May 1, 2020),
    https://www.ocsd.org/documents/sheriff/COVIDStats5.1.20.pdf .................................. 7

Rule 23(a) .................................................................................................... 2, 12, 14

Rule 23(a)(1) .............................................................................................................. 12

Rule 23(a)(3) .............................................................................................................. 16

Rule 23(a)(4) .............................................................................................................. 17

Rule 23(b) .................................................................................................................. 12

Rule 23(b)(2) ....................................................................................................... *passim*

Rule 23(c)(4) .............................................................................................................. 12

Rule 23(c)(5) .............................................................................................................. 12

Rule 23's ................................................................................................................... 12

Sarah Volpenhiem, *Marion prison coronavirus outbreak seeping into larger
    community* ............................................................................................................ 8

# I.    INTRODUCTION

Pursuant to Rule 23(b)(2), Plaintiffs move for provisional certification of a class seeking injunctive relief.  Plaintiffs are people incarcerated at the Orange County Jail (the "Jail") under conditions that render them at high risk of becoming victims of the COVID-19 global pandemic.  COVID-19, a highly infectious respiratory illness, is already spreading within the Jail.  Some Plaintiffs are held in pre-trial detention, and others are incarcerated after being convicted, but all of them are at risk of infection.  As of the filing of this brief, 259 people in the Jail have been confirmed positive for COVID-19.[1]  This number can be expected to grow rapidly, given the exponential spread of the disease.  *See* Exhibit B, Declaration of Daniel Parker ("Parker Decl.") ¶ 24.  Indeed, it has already more than doubled since this case was first initiated.[2]

Social distancing, adequate hygiene measures, quarantining of the close contacts of infected and exposed individuals, and testing are essential to reducing the spread of the virus.  Yet Defendants are failing to implement these basic safeguards, which are necessary to protect Plaintiffs and the putative class from contracting COVID-19.  Most notably, Defendants' failure to implement social distancing throughout the Jail, or to reduce the Jail's population significantly enough to make such distancing possible, places Plaintiffs and the putative class at imminent and unreasonable risk of serious illness or death.

Plaintiffs bring this class action to require Defendants to remove the people most at risk of death from the Jail and to adequately protect from COVID-19 infection those who remain confined at the Jail.  To do so, Defendants must reduce the population at the Jail to levels that will allow for compliance with the Centers for Disease Control and Prevention ("CDC") guidance on social distancing, and implement public health recommendations on testing, quarantining, disinfection, and hygiene.

---

[1]  Orange County Sheriff's Department, COVID-19 in OC Jails (May 8, 2020), https://www.ocsd.org/documents/sheriff/COVIDStats5.8.20.pdf.

[2]  Orange County Sheriff's Department, COVID-19 in OC Jails (Apr. 29, 2020).

Because Plaintiffs seek emergency class-wide injunctive relief, Plaintiffs request provisional certification of: (1) an injunctive relief class comprised of all current and future pre-trial detainees incarcerated at the Orange County Jail (the "Pre-trial Class"); and (2) all current and future post-conviction prisoners incarcerated at the Orange County Jail from the present until the COVID-19 pandemic has abated (the "Post-conviction Class"). For both the pre-trial and post-conviction classes, Plaintiffs seek provisional certification of: (1) a subclass of all persons who, by reason of age or medical condition, the CDC has identified as particularly vulnerable to injury or death if they were to contract COVID-19 ("Medically-Vulnerable Subclass"); and (2) a subclass of all persons within the Medically-Vulnerable Subclasses who are vulnerable because of a disability as defined in federal law ("Disability Subclass"). *See Nat'l Ctr. for Immigrants Rights, Inc. v. I.N.S.*, 743 F.2d 1365, 1371 (9th Cir. 1984) (holding that in the absence of class certification, preliminary injunction can cover only the named plaintiffs).

A district court has the authority to provisionally certify a class for purposes of entering preliminary injunctive relief. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). Federal courts in the Ninth Circuit "routinely grant provisional class certification for purposes of entering [preliminary] injunctive relief" under Rule 23(b)(2), when, as here, plaintiffs establish that the four prerequisites of Rule 23(a) are met. *Carillo v. Schneider Logistics, Inc.*, No. 11-cv-8557, 2012 WL 556309, at *9 (C.D. Cal. Jan. 31, 2012) (internal citation omitted); *see also Roman v. Wolf*, No. 5:20-cv-768, (TJH) (PHV) (C.D. Cal. Apr. 23, 2020), Dkt. No. 52 (Provisional Class Certification Order).

Federal courts across the country are routinely certifying classes and subclasses of individuals who are, like Plaintiffs here, alleging that jails, prisons, and immigration detention centers are violating the constitutional and statutory rights of those in their custody by failing to protect them from COVID-19. *See Id.* (certifying provisional class of ICE detainees challenging conditions of their confinement in light of COVID-19 pandemic); *Fraihat v. U.S. Immigr. & Customs Enf't.*, -- F. Supp. 3d --, No. EDCV 19-

1546 (JGB) (SHK), 2020 WL 1932570, at *17 (C.D. Cal. Apr. 20, 2020) 2020 WL
1932570, at *20 (C.D. Cal. Apr. 20, 2020) (same); *Zepeda Rivas v. Jennings*, --- F. Supp.
3d ---, 2020 WL 2059848, at *1 (N.D. Cal. Apr. 29, 2020) (same); *Alcantara v.
Archambeault*, No. 3:20-cv-756 (DMS) (AHG), Dkt. No. 41 (S.D. Cal. May 1, 2020)
(same). *See also Mays v. Dart*, --- F. Supp. 3d ---, 2020 WL 1812381, at * 4 (N.D. Ill. Apr.
9, 2020) (certifying provisional subclass of medically-vulnerable pre-trial detainees
exposed to COVID-19); *Wilson v. Williams*, No. 4:20-cv-00794, 2020 WL 1940882, at *8
(N.D. Ohio Apr. 22, 2020) (certifying medically-vulnerable subclass for habeas release in
class action by prisoners exposed to COVID-19 outbreak); *Savino v. Souza,* No. 20-10617,
2020 WL 1703844, at *7 (D. Mass. Apr. 8, 2020) (granting provisional class certification
to class of detainees in immigration detention seeking habeas release in COVID-19 case).

## II.    SUMMARY OF RELEVANT FACTS

COVID-19 is a highly contagious disease that poses grave health risks in serious
cases, particularly to medically-vulnerable people.  *See* Exhibit C, Declaration of Joe
Goldenson ("Goldenson Decl.") ¶¶ 9 -10; Exhibit B, Parker Decl. ¶ 6.  Jails pose a
heightened risk for the spread of COVID-19.  Exhibit C, Goldenson Decl. ¶ 16; Exhibit B,
Parker Decl. ¶ 11.  Social distancing, "the cornerstone of reducing transmission of
respiratory diseases such as COVID-19," is not possible when people must closely share
bunkrooms, bathrooms, cafeterias and other enclosed spaces.  Exhibit C, Goldenson Decl.
¶ 16 (quoting the CDC); Exhibit B, Parker Decl. ¶¶ 13-15.

The CDC has issued guidance about the prevention of COVID-19, including
guidance specific to correctional and detention facilities.  *See* CDC, Interim Guidance on
Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention
Facilities, (March 23, 2020), https://www.cdc.gov/coronavirus/2019-
ncov/downloads/guidance-correctional-detention.pdf.  This guidance describes how to
properly quarantine, isolate and care for persons with symptoms and their close contacts.

It calls for regular disinfection and frequent and thorough hand washing with soap, and for facilities to provide masks and protective equipment to be worn in congregate settings.

As set out more fully in the Complaint (ECF 1), Defendants have failed to take adequate steps to reduce the risk of transmission of COVID-19, and failed to implement the CDC's Guidance, placing all Plaintiffs at risk of harm, including death. These failures include:

- **Failure to Quarantine:** Defendants have not uniformly quarantined new arrivals at the Jail; and even when it does quarantine people, it places many in unreasonably risky conditions. *See* Exhibit D, Declaration of Michael Seif ("Seif Decl.") ¶ 10; Exhibit E, Declaration of Don Wagner ("Wagner Decl.") ¶ 14. The Jail quarantines the close contacts of confirmed COVID-19 cases in cohorts—a practice that is discouraged by the CDC because it places uninfected individuals at risk. Exhibit B, Parker Decl. ¶ 16; Exhibit C, Goldenson Decl. ¶ 46. The Jail also defeats the purpose of quarantines by mixing cohorts with each other. *See* Exhibit F, Declaration of Julian Miranda, Jr. ("Miranda Decl.") ¶¶ 22, 25; Exhibit G, Declaration of Javier Esparza ("Esparza Decl.") ¶ 7; Exhibit H, Declaration of Carlos Godinez Sanchez ("Godinez Sanchez Decl.") ¶ 11. In the case of at least one of these quarantines, the Jail's ineffective quarantine practices may have contributed to a major cluster of infections. Exhibit F, Miranda Decl. ¶¶ 8, 25; Exhibit H, Godinez Sanchez Decl. ¶¶ 8-9; Exhibit C, Goldenson Decl. ¶ 45.

- **Lack of Social Distancing:** The Jail has not implemented procedures to allow Plaintiffs to socially distance from other people. Many class members sleep in rows of dormitory-style bunks close enough to touch their neighbors, in cells with as many as eight people to a cell, or in cells with open bars to the nearby cells. *See* Exhibit I, Declaration of Melissa Ahlman ("Ahlman Decl.") ¶¶ 7-8, 11-14; Exhibit J, Declaration of Enrique Hernandez ("Hernandez Decl.") ¶¶ 6-10, 30 (sharing a cell

with six individuals with beds inches apart).  Detainees have constant, forced contact with many others who may have been exposed to COVID-19.  Exhibit F, Miranda Decl. ¶ 7; Exhibit H, Godinez Sanchez Decl. ¶ 6; Exhibit K, Declaration of Pedro Bonilla ("Bonilla Decl.") ¶¶ 6-7; Exhibit L, Declaration of Cecibel Caridad Ortiz ("Caridad Ortiz Decl.") ¶¶ 5-7.  Plaintiffs have not been able to socially distance during recreation, eating, and/or while seeking medical care.  *See, e.g.*, Exhibit M, Declaration of Mark Trace ("Trace Decl.") ¶ 7; Exhibit K, Bonilla Decl. ¶ 6; Exhibit L, Caridad Ortiz Decl. ¶ 6;  Exhibit N, Declaration of Monique Castillo ("Castillo Decl.") ¶ 8-11; Exhibit O, Declaration of Cynthia Campbell ("Campbell Decl.") ¶ 10-11; Exhibit E, Wagner Decl. ¶ 6.  Defendants frequently move people around the Jail without regard to potential exposures.  *See* Exhibit F, Miranda Decl. ¶¶ 4, 6, 9-12; Exhibit I, Ahlman Decl. ¶¶ 5, 21-22;  Exhibit H, Godinez Sanchez Decl. ¶¶ 7, 10-13, 19; Exhibit L, Caridad Ortiz Decl. ¶¶ 18-19; Exhibit D, Seif Decl. ¶ 9; Exhibit P, Declaration of Jaime Herrera ("Herrera Decl.") ¶¶ 6,10; Exhibit E, Wagner Decl. ¶ 14; Exhibit M, Trace Decl. ¶ 15; Exhibit Q, Declaration of Dalton James Cardone ("Cardone Decl.") ¶ 14.

- **Inadequate Hygiene**: The Jail fails to provide sufficient hygiene, cleaning supplies and disinfectants at no cost to the detainees, providing 1-2 single use bars of soap once a week that barely last one day.  *See e.g.*, Exhibit M, Trace Decl. ¶ 13; Exhibit K, Bonilla Decl. ¶¶ 12, 15, 16; Exhibit L, Caridad Ortiz Decl. ¶¶ 14-15; Exhibit N, Castillo Decl. ¶¶ 17, 19; Exhibit O, Campbell Decl. ¶ 16; Exhibit I, Ahlman Decl. ¶¶ 18-19; Exhibit E, Wagner Decl. ¶¶ 15, 18.  The meager allotment of soap does not allow people to wash their hands regularly and clean themselves.  Defendants also provide flimsy, improvised masks that detainees must reuse indefinitely.  *See* Exhibit I, Ahlman Decl. ¶ 18; Exhibit K, Bonilla Decl. ¶ 12; Exhibit R, Declaration of Eddie Baguiao ("Baguiao Decl.") ¶ 13; Exhibit Q, Cardone Decl. ¶¶ 11-12; Exhibit N, Castillo Decl. ¶ 17; Exhibit J, Hernandez Decl. ¶ 24; Exhibit P, Herrera

Decl. ¶ 11; Exhibit S, Declaration of Daniel Kauwe ("Kauwe Decl.") ¶ 10; Exhibit F, Miranda Decl. ¶ 16; Exhibit L, Caridad Ortiz Decl. ¶ 14; Exhibit T, Declaration of Praney Saem ("Saem Decl.") ¶ 15; Exhibit M, Trace Decl. ¶ 17; Exhibit E, Wagner Decl. ¶ 18.[3]

- **Failure to Disinfect:** The Jail does not properly disinfect frequently touched surfaces to prevent the spread of the virus.  Incarcerated people are responsible for cleaning communal areas, including the toilets and showers, but the Jail does not provide sufficient cleaning supplies.  *See* Exhibit I, Ahlman Decl. ¶¶ 19-20; Exhibit K, Bonilla Decl. ¶ 16; Exhibit R, Baguiao Decl. ¶¶ 14-15; Exhibit O, Campbell Decl. ¶ 20; Exhibit N, Castillo Decl. ¶ 19; Exhibit G, Esparza Decl. ¶ 12; Exhibit H, Godinez Sanchez Decl. ¶ 17; Exhibit J, Hernandez Decl. ¶¶ 11-12; Exhibit F, Miranda Decl. ¶¶ 17, 24-25; Exhibit M, Trace Decl. ¶ 18; Exhibit E, Wagner Decl. ¶ 15.

- **Lack of Testing:** Despite California's directive prioritizing testing in jails, the Jail has refused to test or isolate detainees who have COVID-19 symptoms unless they have a high fever, and only a limited number of detained individuals have been tested in the Jail.  *See* Exhibit I, Ahlman Decl. ¶ 17; Exhibit M, Trace Decl. ¶ 9; Exhibit J, Hernandez Decl.  ¶¶ 13, 16; Exhibit T, Saem Decl. ¶ 10; Exhibit E, Wagner Decl. ¶ 9.  Such limited testing is plainly inadequate as it exposes presumptively healthy detainees to others with illness.  Exhibit B, Parker Decl. ¶ 17.

---

[3] Defendants assert that some of these hygiene practices have recently changed. To the extent they have, however, a jail-wide change in policy and practice would support rather than cut against class treatment.

The inadequacy of Defendants' efforts to date are reflected in the rapidly growing infection rates.  The first confirmed COVID-19 case in the Jail was reported on March 24, 2020.  On April 12, the Jail reported that 13 incarcerated people had confirmed COVID-19 cases.  The numbers have continued to escalate precipitously.  On April 29, at the time Plaintiffs' initiated this action, 117 incarcerated people had tested positive for COVID-19.[4]  By May 1, 2020, the number of confirmed cases had risen to 168.[5]  As of May 8, 259 people have tested positive.[6]  At this rate of infection spread, it is only a matter of time—and not much time—before most of the Jail population will be infected.

The growing infection poses an urgent risk to all individuals in the Orange County Jail, and it poses a heightened threat of serious complications and death to those individuals who are medically vulnerable, most of whom have disabilities.  Exhibit B, Parker Decl. ¶ 19.  Without urgent implementation of vigilant testing, social distancing, and appropriate quarantine and isolation of all infected individuals, the Jail faces the looming threat of a widespread outbreak that could overwhelm not only the Jail's available medical resources, but the entire Orange County Hospital System.  *Id.* at ¶¶ 25-26, 29.  Based on patterns observed to date, 10% of those infected can be expected to require intensive medical care and 1% to 2% of those infected may die.  *Id.* at ¶ 27.  Growing evidence shows that failures to intervene early in prisons and jails have led to infection rates of up to 50% or more of the population inside[7].  If infection rates at the Orange County Jail are allowed to continue

---

[4]  Orange County Sheriff's Dep't, COVID-19 in OC Jails (Apr. 29, 2020), https://www.ocsd.org/documents/sheriff /COVIDStats4.29.20.pdf.

[5]  Orange County Sheriff's Dep't, COVID-19 in OC Jails (May 1, 2020), https://www.ocsd.org/documents/sheriff/COVIDStats5.1.20.pdf.

[6]  Orange County Sheriff's Department, COVID-19 in OC Jails (May 8, 2020), https://www.ocsd.org/documents/sheriff/COVIDStats5.8.20.pdf.

[7] *See* Miriam Hernandez, *COVID-19 Infects More Than Half of Inmates at Terminal Island Prison in San Pedro*, ABC-7 (Apr. 29, 2020, 11:03 PM), https://abc7.com/terminal-island-prison-coronavirus-covid19-bureau-of-prisons/6138903/("As of Wednesday, 570 of the

to rise, the surge in need for specialized hospital beds "could lead to a humanitarian disaster." Exhibit B, Parker Decl. ¶ 29.

### III.   PLAINTIFFS' PROPOSED CLASSES

Plaintiffs seek class certification under Federal Rule of Civil Procedure 23(b)(2) for injunctive, declaratory, and habeas relief. Plaintiffs propose to represent two injunctive and habeas corpus ("habeas") relief classes:

- **Pre-trial Class:** All current and future pre-trial detainees incarcerated at the Orange County Jail from the present until the COVID-19 pandemic has abated;

- **Post-conviction Class:** All current and future post-conviction prisoners incarcerated at the Orange County Jail from the present until the COVID-19 pandemic has abated.

Plaintiffs additionally seek certification of two injunctive and habeas relief subclasses for each of the pre-trial detainee and post-conviction prisoner classes:

- **Medically-Vulnerable Pre-trial Subclass:** Members of the Pre-trial Class who are medically vulnerable to COVID-19 infections based on their age, disabilities, and/or health conditions;

---

1,055 inmates have tested positive as well as 10 staff members."); Sarah Volpenhiem, *Marion prison coronavirus outbreak seeping into larger community*, Marion Star (Apr. 25, 2020 4:16 PM) https://www.marionstar.com/story/news/local/2020/04/25/marion-prison-ohio-coronavirus-outbreak-seeping-into-larger-community/3026133001/ ("More than 80% of Marion Correctional Institution's inmates have tested positive for COVID-19, the disease caused by the coronavirus, along with more than 160 corrections officers and other employees . . .").

    ○  **Disability Pre-trial Subclass:** Members of the Medically-Vulnerable Pre-trial Subclass who are medically vulnerable specifically because of disabilities protected under federal law;

- **Medically-Vulnerable Post-conviction Subclass:** Members of the Post-conviction Class who are medically vulnerable to COVID-19 infections based on their age, disabilities, and/or health conditions;

    ○  **Disability Post-conviction Subclass:** Members of the Medically-Vulnerable Post-conviction Subclass who are medically vulnerable specifically because of disabilities protected under federal law.

The Medically-Vulnerable Subclasses are defined as all current and future persons held at the Orange County Jail over the age of 55, as well as all current and future persons held at the Jail of any age who experience: (a) lung disease, including asthma, chronic obstructive pulmonary disease (e.g. bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) epilepsy; (f) hypertension; (g) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or autoimmune diseases); (h) blood disorders (including sickle cell disease); (i) inherited metabolic disorders; (j) history of stroke; (k) a developmental disability; and/or (l) a current or recent (last two weeks) pregnancy.  Exhibit C, Goldenson Decl. ¶ 27.

The Disability Subclasses are defined as all current and future members of the Medically-Vulnerable Subclasses who are vulnerable because of a disability as defined under federal disability rights laws.  The Disability Subclasses include all members of the Medically-Vulnerable Subclasses except those who are vulnerable solely by reason of age

or current or recent pregnancy.  People with all other conditions listed in the preceding paragraph are people with disabilities and members of the Disability Subclasses.

Through this action, Plaintiffs are seeking injunctive relief requiring Defendants to follow the guidance of public health officials and medical professionals to reduce the risk of COVID-19 transmission by ensuring that the putative class members: can practice social distancing; have access to adequate sanitation and personal protective equipment; receive timely and adequate medical care, screening, and testing; and be quarantined and isolated when and as appropriate.  Plaintiffs are also seeking immediate release for all medically-vulnerable and disabled individuals being held in the Orange County Jail, pursuant to a writ of habeas corpus and injunctive relief.

## IV.   NAMED PLAINTIFFS

The ten named plaintiffs are all currently incarcerated in the four facilities that comprise the Orange County Jail.  *See* ECF 1 ¶ 49–50 (describing in detail the Intake and Release Center (IRC), the Men's Central Jail (MCJ), the Women's Central Jail (WCJ), and the Theo Lacey Facility (TLF)); Exhibit I, Ahlman Decl. ¶ 3; Exhibit S, Kauwe Decl. ¶ 3; Exhibit D, Seif Decl. ¶ 3; Exhibit G, Esparza Decl. ¶ 3; Exhibit K, Bonilla Decl. ¶ 3; Exhibit O, Campbell Decl. ¶ 3; Exhibit N, Castillo Decl. ¶ 3; Exhibit M, Trace Decl. ¶ 3; Exhibit L, Caridad Ortiz Decl. ¶ 3; Exhibit E, Wagner Decl. ¶ 3.

Plaintiffs Ms. Ahlman, Mr. Kauwe and Mr. Seif are each detained pending trial and seek to represent the class of all current and future Pre-trial detainees (the "Pre-trial Class") at the Orange County Jail.  Exhibit I, Ahlman Decl. ¶ 4; Exhibit S, Kauwe Decl. ¶ 5; Exhibit D, Seif Decl. ¶ 5.  Mr. Kauwe and Mr. Seif are medically vulnerable and have disabilities as defined under federal law and seek to represent the Medically-Vulnerable and Disability Pre-trial Subclasses.  Mr. Kauwe is immunocompromised and prone to infection, and is currently housed in the medical unit.  Exhibit S, Kauwe Decl. ¶ 13.  Mr. Seif had a collapsed lung shortly before his incarceration and has not had adequate follow-up care.  Exhibit D, Seif Decl. ¶ 8.

Plaintiffs Mr. Esparza, Mr. Bonilla, Ms. Campbell, Ms. Castillo, Mr. Trace, Ms. Caridad Ortiz, and Mr. Wagner are each incarcerated post-conviction and seek to represent a class of all current and future Post-conviction prisoners at the Orange County jail (the "Post-conviction Class"), including those serving a term of incarceration pursuant to an adjudicated violation of probation or parole.  Exhibit G, Esparza Decl. ¶ 5; Exhibit K, Bonilla Decl. ¶¶ 4–5; Exhibit N, Castillo Decl. ¶¶ 5–6; Exhibit M, Trace Decl. ¶ 6; *State v. Cynthia Marie Campbell*, No. 19NF2185 (conviction date, Mar. 13, 2020); *State v. Cecibel Caridad Ortiz,* No. 18HF1511 (conviction date, Sept. 30, 2019); *United States v. Don Wagner*, No. 90020298 (conviction date, Jan. 7, 2020).

Plaintiffs Mr. Bonilla, Ms. Campbell, Ms. Castillo, Mr. Trace, Ms. Caridad Ortiz and Mr. Wagner are medically vulnerable and have disabilities as defined under federal law and seek to represent the Medically-Vulnerable and Disability Post-conviction Subclasses.  Exhibit K, Bonilla Decl. ¶ 21; Exhibit O, Campbell Decl. ¶¶ 5–6; Exhibit N, Castillo Decl. ¶ 7; Exhibit M, Trace Decl. ¶ 8; Exhibit L, Caridad Ortiz Decl. ¶¶ 8-9; Exhibit E, Wagner Decl. ¶ 7.

Three of the plaintiffs, Ms. Campbell, Ms. Castillo, and Ms. Caridad Ortiz are housed in a designated medical unit.  Exhibit O, Campbell Decl. ¶ 3; Exhibit N, Castillo Decl. ¶ 4; Exhibit L, Caridad Ortiz Decl. ¶ 5.  Ms. Campbell is 64-years-old and has rheumatoid arthritis.  As a result of her medical condition, she receives immunosuppressants.  Exhibit O, Campbell Decl. ¶ 6.  Ms. Castillo and Ms. Caridad Ortiz have, and receive medication for, anxiety and Type I diabetes.  Exhibit N, Castillo Decl. ¶ 7; Exhibit L, Caridad Ortiz Decl. ¶¶ 8–9.  Mr. Bonilla has Hepatitis C.  Exhibit K, Bonilla Decl. ¶ 21.  Mr. Trace has sclerosis of the liver, Hepatitis C and D, asthma, tuberculosis, valley fever and seizures.  Exhibit M, Trace Decl. ¶ 8.  Mr. Wagner is 68-years-old, with a history of cancer.  Exhibit E, Wagner Decl. ¶ 7.  Mr. Wagner requires daily blood pressure and thyroid monitoring.  *Id*. at  ¶ 8.

# V.   ARGUMENT

A plaintiff whose suit meets the requirements of Federal Rule of Civil Procedure 23(a) and fits into one of the categories of Rule 23(b) has a "categorical" right to "pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 398 (2010). Here, the proposed Classes and Subclasses each meet the four requirements for class certification under Federal Rule of Civil Procedure 23(a), and certification under Rule 23(b)(2) is appropriate because this case seeks purely declaratory and injunctive relief. Under Rule 23(c)(4), "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Rule 23(c)(5) provides that "[w]hen appropriate, a class may be divided into subclasses that are treated as a class under this rule." Fed. R. Civ. P. 23(c)5).

Because Plaintiffs easily satisfy Rule 23's requirements, the Court should grant provisional certification, and issue a temporary restraining order, preliminary injunction, and/or writ of habeas corpus to protect Plaintiffs' health and safety from imminent threat of serious illness or death.

## A.   The Proposed Injunctive Relief Classes and Subclasses Meet the Requirements of Rule 23(a).

### 1.   Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no "magic number" that establishes numerosity, *Hum v, Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995), "numerosity is presumed where the plaintiff class contains forty or more members," *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 627, 634 (C.D. Cal. 2009). Plaintiffs need only "show some evidence or reasonably estimate the number of class members." *Kincaid v. City of Fresno*, 244 F.R.D. 597, 601 (E.D. Cal. 2007) (citation omitted).

Each proposed Class and Subclass meets the numerosity requirement. There are approximately 3,047 individuals currently incarcerated in the Jail.[8] Plaintiffs seek relief on behalf of all people detained at the Jail: each person is a member of either the Pre-trial Class or the Post-conviction Class. Each subclass is significantly greater than forty people at any given time. According to the most recent data collected by the California Board of State and Community Corrections ("BSCC") (an independent statutory agency of the State of California), approximately 57% of the Orange County Jail population is being held pre-trial and 43% of the population is serving a sentence of incarceration.[9]

Further, because people in jails generally have high rates of disability and chronic illness, an estimated 40% of the Pre-trial and Post-conviction Classes are expected to be members of the Disability Subclasses, with an even greater number being a part of each Medically-Vulnerable Subclass.[10] Even without knowing the exact size of each proposed Class and Subclass, those numbers alone satisfy the numerosity requirement. *See Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."). Moreover, the exact numbers of people in each Subclass should be easily identifiable based on records in the possession of Defendants.

The numerosity requirement is also met because joinder is impracticable. First, the proposed Classes and Subclasses are numerous. *See In re Cooper*, 254 F.R.D. at 634 ("Joinder of more than a thousand plaintiffs would be impracticable."). Second, the

---

[8] California Board of State and Community Corrections, *Supplemental JPS Reporting Dashboard* (last visited May 4, 2020) https://app.smartsheet.com/b/publish?EQBCT=82b29a92ea9a4a0ea7aa480f1287e137.

[9] BSCC, *County Jail Populations by Sentenced, Non-Sentenced and Offense Type for the Fourth Quarter of 2019* (Mar. 6, 2020), http://www.bscc.ca.gov/wp-content/uploads/Jail-Pop-Trends-Through-Q4-2019.pdf.

[10] Bureau of Justice Statistics, *Disabilities Among Prison and Jail Inmates, 2011-12,* U.S. Dep't of Justice, 1 (Dec. 2015), https://www.bjs.gov/content/pub/pdf/dpji1112.pdf; Goldenson Decl. ¶ 27.

proposed Classes and Subclasses include future members.  *See Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986) ("[W]here the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met, regardless of class size.") (citation omitted).  Third, the members of the proposed Classes and Subclasses are incarcerated during a pandemic, rendering their ability to initiate lawsuits limited.  *See Fraihat*, -- F. Supp. 3d --, No. EDCV 19-1546 (JGB) (SHKx), 2020 WL 1932570, at *17 (C.D. Cal. Apr. 20, 2020) ("Given the many obstacles to accessing counsel during the COVID-19 pandemic, the Court is concerned that many putative class members would not be able to proceed on their own, a fact which further highlights the impracticability of joinder.").

## 2.   Commonality

Rule 23(a) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  However, commonality "does not . . . mean that *every* question of law or fact must be common to the class."  *Abdullah v. U.S. Sec. Assocs. Inc.*, 731 F.3d 952, 957 (9th Cir. 2013).  "Commonality turns on whether the class treatment will generate common answers apt to drive the resolution of the litigation."  *Roman*, No. 5:20-cv-768 (TJH) (PHV), (C.D. Cal. Apr. 23, 2020), Dkt. No. 52 at 3.  Commonality requires only that "plaintiffs' claims must depend on a common contention, such that determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (citation omitted). Commonality can be established by a single common issue.  *Id.*; *see also Abdullah*, 731 F.3d at 957 (Commonality "does not . . . mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single *significant* question of law or fact.") (citations omitted); *Roman*, No. 5:20-cv-768 (TJH) (PHV), (C.D. Cal. Apr. 23, 2020), Dkt. No. 52 at 4 (finding commonality in class action involving challenge to immigration detention during COVID-19 crisis "because the common question that will

generate common answers apt to drive the resolution of this litigation is whether the putative class members' . . . due process rights are being violated").

In cases where plaintiffs seek injunctive and declaratory relief, commonality exists "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (*abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005)); *Wal-Mart Stores, Inc. v. Dukes* 564, U.S. 338, 349 (2011). "[B]y their very nature," suits for injunctive or declaratory relief "often present common questions satisfying Rule 23(a)(2)." 71 Mary J. Kane, *Fed. Prac.  Proc. Civ.* § 1763 (3d ed. 2018).

Federal courts routinely find that commonality exists for classes of people who allege system-wide failures in large state institutional agencies, as the proposed classes do here.  *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 989 (D. Ariz. 2011) ("In a civil rights suit, 'commonality is satisfied where the lawsuit challenges a systemwide practice or policy that affects all of the putative class members.'"), *aff'd sub nom. Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012). Federal courts across the country are routinely finding common questions of law and fact for classes and subclasses of people who, like Plaintiffs here, allege systemic violations of constitutional and statutory rights in jails, prisons, and immigration detention that are failing to protect people in their custody from COVID-19.  *See Roman*, No. 5:20-cv-768 (TJH) (PHV) (C.D. Cal. Apr. 23, 2020), Dkt. No. 52; *Fraihat*, 2020 WL 1932570, at *20 (C.D. Cal. Apr. 20, 2020); *Zepeda Rivas v. Jennings*, --- F. Supp. 3d ---, 2020 WL 2059848, at *1 (N.D. Cal. Apr. 29, 2020); *Alcantara v. Archambeault*, No. 3:20-cv-756 (DMS) (AHG) (S.D. Cal. May 1, 2020) , Dkt. No. 41. *See also Mays v. Dart*, --- F. Supp. 3d ---, 2020 WL 1812381, at * 4 (N.D. Ill. Apr. 9, 2020); *Wilson v. Williams*, No. 20-cv-00794, 2020 WL 1940882, at *8 (N.D. Ohio April 22, 2020);  *Savino v. Souza,* No. 20-10617, 2020 WL 1703844, at *7 (D. Mass. April 8, 2020).

Plaintiffs and all members of the proposed Classes and Subclasses share a common core of facts: they are detained in the Jail during the COVID-19 pandemic, subject to the

same policies and practices promulgated by Defendants.  *See Parsons*, 754 F.3d at 678 (finding commonality in suit against state prison officials, where "all members of the putative class and subclass have in common . . . their alleged exposure, as a result of specified statewide ADC policies and practices that govern the overall conditions of health care services and confinement, to a substantial risk of serious future harm to which the defendants are allegedly deliberately indifferent.").  In this case, the common policies and practices that expose the entire class to a substantial risk of serious harm, and that put the Medically Vulnerable and Disability Subclass at special risk, are Defendants' failure to house people under conditions that permit social distancing, failure to carry out adequate quarantines as recommended by CDC guidance, failure to provide adequate access to disinfection and hygiene, failure to test adequate numbers of people, and other infection control issues that heighten the risk of COVID-19 infection.  As this Court recently observed in *Fraihat*, the fact that different class members may have "varying medical conditions and risk factors" does not defeat commonality.  *Fraihat*, 2020 WL 1932570, at *18.

There is one over-arching issue that can be decided in one stroke: whether Defendants, through their jail-wide policies and practices, have violated the constitutional and statutory rights of the putative Class and Subclass members by exposing them to an excessive risk of COVID-19 infection.

### 3.    Typicality

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).  This requirement is established where the named class representatives' claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation omitted).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by

the same course of conduct." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 970 (9th Cir. 2019) (citation omitted).

The proposed Class and Subclasses meet the typicality requirement because the named Plaintiffs and proposed Class and Subclass members are all individuals who are detained at the Jail, and their claims all arise from the same failure to adequately implement social distancing and other safety measures in response to COVID-19. All suffer similar risks of harm from Defendants' class-wide policies and practices: a heightened risk of contracting COVID-19 and, if infected, severe risks of organ failure and death. *See Parsons*, 754 F.3d at 686 ("[G]iven that *every* inmate in [Arizona Department of Corrections] custody is highly likely to require medical, mental health, and dental care, each of the named plaintiffs is similarly positioned to all other ADC inmates with respect to a substantial risk of serious harm resulting from exposure to the defendants' policies and practices governing health care.").

### 4.   Adequacy of Representation

Finally, Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Whether the class representatives satisfy the adequacy requirement depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Rodriguez*, 591 F.3d at 1125 (citation omitted).

Both requirements of Rule 23(a)(4) are satisfied here. Plaintiffs share interests with the proposed Classes: they have the same injury and seek the same relief, namely, (1) a declaration that their conditions of confinement for all individuals detained at the Jail are unconstitutional under the Fourteenth Amendment and/or the Eighth Amendment because they do not permit social distancing or provide sufficient safeguards against COVID-19, and (2) a Writ of Habeas Corpus or an injunction remedying those practices. The

Medically-Vulnerable and Disability Subclass Representatives also seek the same relief for themselves as they do for all members of their respective Subclasses.

There are no irreparable conflicts between the interests of the named Plaintiffs and the class as a whole. The test for an "irreparable conflict of interest" is whether the conflict is so fundamental that it "would deny absent class members adequate representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998). In this case, no such conflict exists because the basic interests of all class members are aligned in challenging Defendants' common failure to adequately protect the entire class from COVID-19 infection. That the immediate habeas relief sought by Medically-Vulnerable and Disability Subclasses does not run to all Class members, does not render the conflict irreparable. Granting immediate release of the approximately 488 members of the proposed Medically-Vulnerable and Disability Subclasses would provide benefits not only to those Subclasses, but to the class as a whole: it is only with a significant population reduction that the Jail will be able to successfully implement the public health measures needed to prevent harm to the other Class members in the form of COVID-19 infection, organ failure, and death. Moreover, even if all of the members of the proposed Medically-Vulnerable and Disability Subclasses are released, the interests of the remaining, broader Class members will be adequately represented by Plaintiffs who are members only of the broader Classes. Additionally, because this action is only for injunctive relief and not damages, a class-wide judgment in this case will not preclude individual claims for damages by, for example, the estates of people who die in the Jail due to avoidable COVID-19 infections.

The Plaintiffs will adequately prosecute the action. Each proposed Class and Subclass is represented by named Plaintiffs in this action.[11] The named Plaintiffs' aim to

---

[11] The Pre-trial Class is represented by Plaintiffs Ms. Ahlman, Mr. Kauwe, and Mr. Seif; the Medically-Vulnerable Pre-trial Subclass is represented by Plaintiffs Mr. Kauwe and Mr. Seif; the Disability Pre-trial Subclass is represented by Plaintiffs Mr. Kauwe and Mr. Seif; the Post-conviction Class is represented by Plaintiffs Mr. Esparza, Mr. Bonilla, Ms.

secure relief that will protect both themselves and all members of the Classes and Subclasses. The Plaintiffs seek to enjoin the Defendants from further violation of *all* Class and Subclass members' rights.

Plaintiffs and class counsel will prosecute this action vigorously. Class counsel are qualified when they can establish their experience in previous class actions and cases involving the same area of law. *Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984). The proposed Class and Subclasses are represented by counsel from the American Civil Liberties Union Foundation, The American Civil Liberties Foundation of Southern California, Covington & Burlington LLP, and Schonbrun, Seplow, Harris, Hoffman & Zeldes LLP. Plaintiffs' counsel and the organizations they work for have done substantial work to identify and investigate potential claims in the action, are experienced in and knowledgeable about class actions and other complex litigation, have extensive experience litigating class action lawsuits and other complex cases in federal court (including both habeas actions on behalf of incarcerated people and civil rights class action lawsuits on behalf of incarcerated and detained people), and have the necessary resources to represent the class. *See* Declarations of Mitchell Kamin (Exhibit U), Carl Takei (Exhibit V), Peter Eliasberg (Exhibit W), Paul Hoffman (Exhibit X) and John Washington (Exhibit Y).

## B. The Proposed Classes and Subclasses Meet the Requirements of Rule 23(b)(2).

Federal Rule of Civil Procedure 23(b)(2) requires plaintiffs to establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate

---

Campbell, Ms. Castillo, Mr. Trace, Ms. Caridad Ortiz, and Mr. Wagner; the Medically-Vulnerable Post-conviction Subclass is represented by Plaintiffs Mr. Bonilla, Ms. Campbell, Ms. Castillo, Mr. Trace, Ms. Caridad Ortiz and Mr. Wagner; and the Disability Post-conviction Subclass is represented by Plaintiffs Mr. Bonilla, Ms. Campbell, Ms. Castillo, Mr. Trace, Ms. Caridad Ortiz and Mr. Wagner.

respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) "was adopted in order to permit the prosecution of civil rights actions." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

The Classes and Subclasses that Plaintiffs seek to certify fit squarely within Rule 23(b)(2)'s requirements. The proposed members of each Class and Subclass challenge Defendants' failure to implement adequate safety precautions at the Jail, which exposes them to a heightened risk of contracting COVID-19. The particular status of class members' detention—whether they are pre-trial or post-conviction—and their vulnerability status may impact their claims for relief, but do not alter the fact that relief from Defendants' flawed practice is requested by all class members. Moreover, all proposed Class members request the same uniform relief: (1) a declaration that the conditions of confinement for all individuals detained at the Jail are unconstitutional under the Fourteenth Amendment and/or the Eighth Amendment because they do not permit social distancing or provide sufficient safeguards against COVID-19; and (2) a Writ of Habeas Corpus or an injunction remedying those practices.

Plaintiffs satisfy all requirements for class certification and this Court should certify the Classes and Subclasses requested herein.

## VI.   CONCLUSION

Plaintiffs urge this Court to provisionally certify the requested classes in light of the rapidly growing outbreak of COVID-19 in the Orange County Jail and the severe threat of harm facing all Class members.

Respectfully Submitted,

BRIEF IN SUPPORT OF MOTION FOR PROVISIONAL CLASS CERTIFICATION

/s/Cassandra Stubbs
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Cassandra Stubbs
C.A. Bar No. 218849
Olivia Ensign
N.C. Bar No. 50689
Cristina Becker
N.C. Bar No. 46793
201 W. Main St., Suite 402, Durham, NC 27701
cstubbs@aclu.org
ensign@aclu.or
cbecker@aclu.org

Carl Takei
C.A. Bar No. 256229
Somil Trivedi
D.C. Bar No. 1617967
Clara Spera
N.Y. Bar No. 5590229
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
ctakei@aclu.org
strivedi@aclu.org
cspera@aclu.org

/s/ Peter Eliasberg
AMERICAN CIVIL LIBERTIES FUND OF SOUTHERN CALIFORNIA
Peter Eliasberg
C.A. Bar No. 189110
1313 W. Eighth St.
Los Angeles, CA 90017

/s/ Mitchell Kamin
Mitchell Kamin
C.A. Bar No. 202788
Aaron Lewis
C.A. Bar No. 284244
Brittany Benjamin
C.A. Bar No. 323968
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
(424) 332-4800
alewis@cov.com
mkamin@cov.com
bbenjamin@cov.com

Stacey Grigsby*
D.C. Bar No. 491197
Amia Trigg**
C.A. Bar No. 282890
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
sgrigsby@cov.com
atrigg@cov.com

/s/ John Washington
John Washington
C.A. Bar No. 315991
Schonbrun, Seplow, Harris, Hoffman & Zeldes LLP
11543 W. Olympic Blvd.
Los Angeles, CA 90064
(310) 399-7040
jwashington@sshhlaw.com

s/ Paul Hoffman
Paul Hoffman
C.A. Bar No. 71244
UNIVERSITY OF CALIFORNIA, IRVINE SCHOOL OF LAW
CIVIL RIGHTS LITIGATION CLINIC
401 E. Peltason Dr., Suite 1000, Irvine, CA 92687
(949) 824-0066

Zoe Brennan-Krohn**
C.A. Bar No. 324912
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Disability Rights Program
39 Drumm Street
San Francisco, CA 94111
(415)-343-0769
zbrennan-krohn@aclu.org

ATTORNEYS FOR PLAINTIFFS
*pro hac vice application forthcoming
**C.D. California admission application forthcoming

BRIEF IN SUPPORT OF MOTION FOR PROVISIONAL CLASS CERTIFICATION