LEON J. PAGE, COUNTY COUNSEL
LAURA D. KNAPP, SUPERVISING DEPUTY (CA SBN 162800)
laura.knapp@coco.ocgov.com
D. KEVIN DUNN, SENIOR DEPUTY (CA SBN 194604)
kevin.dunn@coco.ocgov.com
REBECCA S. LEEDS, SENIOR DEPUTY (CA SBN 221930)
rebecca.leeds@coco.ocgov.com
KAYLA N. WATSON, DEPUTY (CA SBN 286423)
kayla.watson@coco.ocgov.com
333 West Santa Ana Boulevard, Suite 407
Post Office Box 1379
Santa Ana, California 92702-1379
Telephone: (714) 834-3300
Facsimile: (714) 834-2359

Attorneys for Defendants DON BARNES
and ORANGE COUNTY, CALIFORNIA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| MELISSA AHLMAN, DANIEL KAUWE, MICHAEL SEIF, JAVIER ESPARZA, PEDRO BONILLA, CYNTHIA CAMPBELL, MONIQUE CASTILLO, MARK TRACE, CECIBEL CARIDAD ORTIZ, and DON WAGNER, on behalf of themselves and all others similarly situated, *et al.*,<br><br>Plaintiffs/Petitioners,<br><br>v.<br><br>DON BARNES, in his official capacity as Sheriff of Orange County, California; and ORANGE COUNTY, CALIFORNIA.<br><br>Defendants/Respondents. | Case No.    8:20-cv-00835-JGB-SHK<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION TO IMMEDIATELY DISSOLVE PRELIMINARY INJUNCTION OR ALTERNATIVELY SET EXPEDITED HEARING TO DISSOLVE PRELIMINARY INJUNCTION** |

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ...................................................................................... 3

I.      INTRODUCTION .......................................................................................... 4

II.     FACTUAL AND PROCEDURAL BACKGROUND ................................... 6

III.    ARGUMENT ................................................................................................. 8

    A.    THE PRELIMINARY INJUNCTION IS NO LONGER "NECESSARY" TO CORRECT A VIOLATION OF ANY FEDERAL RIGHT ................................................................................ 8

    B.    NEW FACTS AND SIGNIFICANT CHANGED CIRCUMSTANCES WARRANT DISSOLVING THE PRELIMINARY INJUNCTION ........................................................ 10

    C.    NEW EVIDENCE WARRANTS THIS COURT DISSOLVING THE INJUNCTION OR SETTING A HEARING TO DO SO ................... 11

        1.    The Information in Support of the Order is No Longer Reflective of Current Circumstances in a Rapidly Improving Environment ................................................................ 11

        2.    Plaintiffs No Longer Face Any Prospect of Irreparable Harm ............................................................... 14

        3.    Comity Counsels Restraint Here and Warrants Presently Dissolving the Injunction .................................................. 15

    D.    DISSOLVING THE INJUNCTION WILL PRESERVE THE STATUS QUO AND NOT HARM PLAINTIFFS ...................................... 16

IV.     CONCLUSION ............................................................................................ 17

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

# TABLE OF AUTHORITIES

**Page No.**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*
  284 F.3d 1091, 1098 (9th Cir. 2002) ....................................................... 10

*Farmer v. Brennan*
  511 U.S. 825, 834 (1994) ......................................................................... 15

*Flores v. Huppenthal*
  789 F.3d 994, 1001 (9th Cir. 2015) .......................................................... 10

*Gon v. First State Ins. Co.*
  871 F.2d 863, 866-67 (9th Cir. 1989) ....................................................... 10

*Gordon v. County of Orange*
  888 F.3d 1118, 1124 (9th Cir. 2018) ........................................................ 14

*Levin v. Commerce Energy, Inc.*
  560 U.S. 413, 421 (2010) ......................................................................... 15

*South Bay Pentecostal Church v. Newsom*
  No. 19A1044, 2020 WL 2813056 (U.S. May 29, 2020) ........................... 15

*State v. Trump*
  871 F.3d 646, 654 (9th Cir. 2017) ............................................................ 10

*Swain*
  2020 WL 3167628, at *5 ........................................................................... 15

*U.S. ex rel. F.T.C. v. Bus. Recovery Servs. LLC*
  488 F. App'x 188, 189-90 (9th Cir. 2012) ................................................ 10

**Statutes**

18 U.S.C. § 3626(a)(1) ................................................................................... 9

18 U.S.C. § 3626(a)(1)(B) .............................................................................. 9

18 U.S.C. § 3626(d)(4) ................................................................................ 9-10

18 U.S.C. § 3626(g)(7) ................................................................................... 8

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

# I.  INTRODUCTION

Defendants earnestly and respectfully implore this Court to lift its May 26, 2020 Preliminary Injunction Order due to significant changed circumstances and new facts. There are presently only **6** COVID cases in the entire Orange County Jail (the "Jail") (*all institutions*) and all those cases are from new arrestees, (who have immediately been placed into quarantine) not from becoming infected in the Jail.  *See* Declaration of Dr. Chiang ¶ 5-6. New arrestees who test positive at booking are quarantined for a minimum of 14 days pursuant to CDC recommendations and are tested prior to joining the general population. As a result of these prompt and critical protocols implemented well before the Court's May 26th Order, the existing inmate population is at ***very low risk*** of contracting COVID. Because of this minimal risk, six feet social distancing at all times among inmates is not necessary, especially, for example, between cellmates, both of whom are COVID-free and interact only with each other—akin to a family unit or roommate—and especially when all inmates have been provided facial coverings/masks and can exchange the face mask on a daily basis.  Further, inmates have ample toilet paper, cleaning supplies, and hand sanitizer at their constant disposal.  *See* photographs attached to Declarations of Captain Rich, Captain Von Nordheim, and Captain Ramirez filed concurrently herewith.  In addition, Jail staff deputies use electromagnetic spray sanitizer to disinfect high touch surfaces twice daily.  *See* Rich Decl., Exh. F.  The Orange County Sheriff's Department's (the "Sheriff") efforts in combatting COVID in the Jail is nothing short of astounding.  There may be institutions under this Court's jurisdiction that have been lax in responding to this pandemic.  The Orange County Sheriff's Department is not one of them.  It is a model in successful management and mitigation of a deadly contagion in difficult circumstances for the benefit of all inmates, staff and the public.  The Sheriff's efforts should be commended. Were the facts regarding hygiene, distancing, personal protective equipment and cleaning anything other than those presented by Defendants to this Court, the results here would not

//

//

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

be as dramatically positive for the inmates.[1]  Plaintiffs have no competing evidence that COVID continues in the jails (other than as described regarding new arrestees).

We are respectfully and earnestly pleading to this Court to examine the stark evidence of: (1) a dramatic decline in COVID at the Jail (before, during, and after this Court's May 26 Order); ( 2) the fact that there are *only 6* remaining cases in the entire Jail; (3) that those remaining cases are from new arrestees from the community and not from transmission in the Jail; and finally, (4) that the Sheriff's robust mitigation measures and verifiable outcomes no longer require this Court's Preliminary Injunction ("Order").

We are respectfully requesting that this Court either: (a) dissolve the Preliminary Injunction upon the showing of changed circumstances by Defendants in these papers, or alternatively, (b) grant Defendants an evidentiary hearing on an expedited basis to further establish the facts supporting dissolving the Preliminary Injunction.

This matter requires examination of current, diminishing numbers for an accurate legal determination.  While COVID cases were already in sharp decline at the Jail on May 26, 2020, the current numbers showing complete eradication of COVID transmission among the inmates at the Jail—a fact that did not exist at the time of this Court's Order, and consequently, could not have been considered by the District Court.  Given this new evidence of *current* COVID cases in the Jail, the Order is not factually or legally supported for it to remain.  Moreover, many of Plaintiffs factual assertions in the Declarations that supported the Order are no longer relevant or were never accurate.  *See* Declaration of

---

[1] Plaintiffs appear to refuse to believe the COVID numbers provided, as if the Sheriff were somewhere hiding additional COVID positive inmates.  Plaintiffs seek unreasonable, unnecessary and promiscuous jail inspections, depositions, and vast and overly burdensome discovery in order (already served) for Defendants to extricate themselves here.  *It is unclear what else the Sheriff could do beyond reduce jail transmission to ZERO and properly quarantine, test and protect new arrestees who are positive or symptomatic.*  Tellingly, Plaintiffs have not proposed *anything* other than sweeping discovery and invasive inspections and examinations that Defendants could do to satisfy them.  The injunction has been weaponized by Plaintiffs here, and it is solely punitive to Defendants at this point.  It is dubious that even complete inmate population inoculation with a 100% effective vaccine (if one existed) would result in any movement of Plaintiffs' position in this matter.  We respectfully seek the Court's assistance.

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

Sergeant Hennessey and Declaration of Erin Winger filed concurrently herewith.  As such, taking all of this current information into consideration, the Order should be dissolved as there are no current facts to support it.  Defendants' new evidence is directly relevant to the balancing of the harms and thoroughly demonstrates why dissolving the Order, or in the alternative, why shortening time to hear the Defendants' Motion to Dissolve the Order, is necessary.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

On April 30, 2020, ten inmates at the Orange County Jails ("OCJ") filed a class action habeas corpus case seeking emergency injunctive relief against Defendants.  ECF 1[2]. Plaintiffs claim that the Sheriff has failed to implement the Center for Disease Control Guidelines ("CDC Guidelines") for custodial facilities and, as a result, Plaintiffs' conditions of incarceration have put them all at imminent risk of serious illness or death from COVID-19. *Id*.

On May 11, 2020, Plaintiffs filed an ex parte application and motion for temporary restraining order and preliminary injunction seeking (1) mandated compliance with CDC Guidelines for COVID-19 in the OCJ, and (2) the immediate release of all "medically vulnerable" jail inmates.  ECF 41-1.  This Court set the matter for telephonic hearing on May 19, 2020.  ECF 51, 55.  On May 26, 2020, the Court issued its 21-page ruling, granting the Plaintiffs class-wide injunctive relief and making findings.  ECF 65.  Because circumstances have dramatically changed since the Court issued its Order, these are the subject of this Motion to Dissolve.

On May 27, 2020, Defendants filed an ex parte application to stay all proceedings pending appeal. ECF 66.  The Court denied Defendants' Stay Application on June 2, 2020. ECF 72.  Defendants then filed an Appeal in the United States Court of Appeals for the Ninth Circuit ("COA") and moved for both an Emergency Stay and Stay Pending Appeal.

---

[2]  All references to ECF are to filings in the District Court case, while references to Dkt. are to filings in the Court of Appeals case.

ECF 68; Dkt. 1, 8. On June 4, 2020, the COA declined an Emergency Stay. Dkt. 10. On June 8, 2020, Plaintiffs filed a response opposing Defendants' request for stay. Dkt. 13. On June 10, Defendants filed a Reply in support of Stay Pending Appeal (Dkt. 14) and an Emergency Motion to Supplement the Record on Appeal. Dkt. 15. On June 12, the COA denied Defendants stay application, however *sua sponte* remanded the case to this Court for the "limited purpose of allowing the parties to present any evidence of changed circumstances that might merit modification or dissolution of the preliminary injunction." Dkt. 16, Dkt. 19-1.

Meanwhile, in this Court, on June 4th Defendants filed a motion to dismiss Plaintiffs' Complaint under FRCP Rule 12(b)(6). ECF 73. On June 12, Plaintiffs filed a First Amended Complaint. ECF 79. On June 15, Plaintiffs oddly filed an opposition to Defendants' motion to dismiss, even though their First Amended Complaint mooted the motion to dismiss. On June 16, prior to meeting and conferring with Defendants, Plaintiffs served Defendants with Plaintiffs' First Set of Interrogatories, Requests for Production of Documents, Notice of Inspection, and Deposition Notices for Commander Balicki, Dr. Chiang, and Ms. Winger. Thereafter, on June 18, Plaintiffs filed a Motion for Expedited Discovery alleging it is "limited in scope" when in fact the requests are premature, invasive, harassing and contrary to the spirit and letter of FRCP Rule 26. Nevertheless, this Court should give priority to this Motion to dissolve the preliminary injunction as suggested by the Court of Appeals. Dkt. 19.

Also, during this time, on June 4th, almost identical Plaintiffs filed a Petition for Writ of Mandate in Orange County Superior Court, Case No. 30-2020-01141117-CU-WM-CXC, seeking class-wide release of all medically vulnerable and disabled inmates in the Jail. *See* Register of Actions attached as Exhibit A. On June 5th, Plaintiffs moved ex parte in the Superior Court for a temporary restraining order and preliminary injunction for class-wide release. Defendants opposed Plaintiffs' ex parte application and to date, the ex parte hearing has not been scheduled by the Superior Court. *Id.*

//

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

As of the filing of this Motion, there are only 6 COVID positive inmates and for the last two weeks, all new COVID cases have come from new arrestees being booked into the Jail. *See* Declaration of Dr. Chiang at ¶¶ 5-6. This is a ***significant decrease*** in COVID positive cases. On May 19th, the date of the hearing there were 161 COVID positives (ECF 65, p. 16). On May 26th, the date the Order was issued there were 67 COVID positive inmates. *Id*. Today, there are 6 COVID positive inmates and <u>all are new arrestees</u>. *See Chaing Decl.* ¶¶5-7. This further demonstrates that Defendants did not fall "significantly short of complying with the CDC Guidelines" (Dkt. 19-1, fn 8) prior to May 26, as it would be ***impossible*** for a correctional facility the size of the Orange County Jail, with multiple congregate living quarters, to make this type of significant progress as Defendants have done here.

## III.   ARGUMENT

### A.   THE PRELIMINARY INJUNCTION IS NO LONGER "NECESSARY" TO CORRECT A VIOLATION OF ANY FEDERAL RIGHT

The Prison Litigation Reform Act ("PLRA") specifically limits prospective relief to that which is "necessary." It also provides that such relief must be "narrowly drawn" and be "the least intrusive means necessary" to correct a violation of a federal right. The PLRA defines prospective relief to mean "all relief other than compensatory monetary damages." 18 U.S.C. sec. 3626(g)(7). Specifically, the PLRA provides:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. sec. 3626(a)(1).

In undertaking this analysis, a federal court must not only consider the "adverse impact on public safety or the operation of a criminal justice system caused by the relief," it must give it "substantial weight" in the analysis.

> (B) . . . The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. sec. 3626(a)(1)(B).

With respect to termination of prospective relief, the PLRA provides:

> (4) Termination or modification of relief.—
>
> Nothing in this section shall prevent any party or intervener from seeking modification or termination before the relief is terminable under paragraph (1) or (2), to the extent that modification or termination would otherwise be legally permissible.
>
> (e) Procedure for Motions Affecting Prospective Relief.—
>
> (1) Generally.—
>
> The court shall promptly rule on any motion to modify or terminate prospective relief in a civil action with respect to prison

conditions. Mandamus shall lie to remedy any failure to issue a
prompt ruling on such a motion.

18 U.S.C. sec 3626(d)(4).  Defendants move pursuant to 18 U.S.C. section 3626(d)(4) to terminate the prospective relief issued in this case on May 26, 2020.

**B.    NEW FACTS AND SIGNIFICANT CHANGED CIRCUMSTANCES WARRANT DISSOLVING THE PRELIMINARY INJUNCTION**

In addition to the PLRA provisions cited above, the Court has ***inherent*** authority to dissolve or modify the injunction here.  "A district court has inherent authority to modify a preliminary injunction in consideration of new facts." *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002).  "A party seeking modification of an injunction bears the burden of establishing that a significant change in facts or law warrants revision of the injunction." *State v. Trump*, 871 F.3d 646, 654 (9th Cir. 2017) (quotation marks and ellipses omitted).  Typically, a motion to modify or dissolve a preliminary injunction is limited to new facts or law, and consequently, "[a] motion to modify or dissolve an injunction cannot be used to challenge the imposition of the original injunction." *U.S. ex rel. F.T.C. v. Bus. Recovery Servs. LLC*, 488 F. App'x 188, 189-90 (9th Cir. 2012).  "On the other hand, a modification may be so fundamental to the original injunction, or may otherwise present issues so inextricable from the validity of the original injunction, that review must include the whole package." *Gon v. First State Ins. Co.*, 871 F.2d 863, 866-67 (9th Cir. 1989).  "A court abuses its discretion when it refuses to modify an injunction or consent decree in light of a significant change either in factual conditions or in law that renders continued enforcement detrimental to the public interest." *Flores v. Huppenthal*, 789 F.3d 994, 1001 (9th Cir. 2015) (quotation marks omitted).

When the preliminary injunction is with respect to jail conditions, the Prison Litigation Reform Act ("PLRA") specifically limits prospective relief to that which is "necessary."  It provides:

Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the

violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

Moreover, the PLRA provides that the court shall promptly rule on any motion to modify or terminate prospective relief in a civil action with respect to prison conditions. Mandamus shall lie to remedy any failure to issue a prompt ruling on such a motion. Pursuant to these provisions, Defendants here are moving to dissolve the preliminary injunction immediately on the facts shown in this application, or alternatively, to facilitate a prompt ruling on the matter, Defendants alternatively request an expedited evidentiary hearing to further establish the facts supporting dissolving the Preliminary Injunction.

## C.   NEW EVIDENCE WARRANTS THIS COURT DISSOLVING THE INJUNCTION OR SETTING A HEARING TO DO SO

### 1.   *The Information in Support of the Order is No Longer Reflective of <u>Current</u> Circumstances in a Rapidly Improving Environment*

"Lies, damned lies, and statistics" is a quote often attributed to Mark Twain.  It stands for the foibles sometimes at play in statistical analysis.  In this case, it appears there may have been some misunderstanding underlying the Sheriff's COVID numbers.  Defendants seek to rectify this discrepancy in order to shed light on the current evidence.

At the time of this Court's May 26, Order, the following was asserted and found true by the Court: "soaring number of confirmed cases"(ECF 65 at 15); "hundreds of infected individuals" (*Id*. at 17); "rates of COVID-19 infections at the Jail are skyrocketing" (*Id*.); "more must be done when there are nearly four hundred confirmed cases in a facility." (ECF 72, p.2.)  These findings are accurate in one regard and Defendants are not seeking to

re-litigate that issue presently.  However, it is crucial to point out a statistical anomaly so that the Court may have a sound grasp of the current situation at the jails.  The number regarding "hundreds," was at all times a *cumulative* number, meaning the number of all known cases that had passed through the jails—*at any time*—during the pandemic.  That number will always go up; it can never go down.  New arrestees—who are the source of *all* current COVID cases at the Jails—are increasing the Sheriff's *cumulative* COVID numbers.  However, when viewed *only* in this context, it leads to confusion.[3]

At no point were there ever more that 219 COVID cases in the Jail (on any one day) (the "daily rate").  That date was May 5, 2020.  Now, with a clear view of the number as the *daily rate* existing at the Jail, we can get a better understanding of what is going on, and why the Sheriff's response to COVID has been so remarkable.  By May 26, 2020, that relevant number—the daily rate, had already dove to 67.  Today that number is only 6.  The chart attached to the Declaration of Dr. Chiang at Exhibit A, shows the dramatic *decreases* in daily COVID cases at the Orange County Jails and the shift from intra-facility spread to new arrestees being the cause of the positive causes via community spread.

Because confusion can ensue by mingling the cumulative number and the daily rate, it bears repeating that even while the Sheriff eradicates COVID transmission from the Jails, the *new arrestees* that are positive or symptomatic are still increasing the *cumulative* numbers at the Jails.  No matter what happens, Plaintiffs can always allege that there are "hundreds" of COVID cases at the jails, that the number is "soaring," when looked at in one specific manner—*cumulatively*.

Defendants submit that the dramatic decrease in the *daily rate* at the jails— continuing from the onset of COVID, through this Court's Order and continuing to present—is a significant change in circumstances and new evidence supporting dissolving the injunction.  Continuation of the injunction now is against the public interest because

---

[3] In retrospect, Defendants, and this Court, would have been well-served by Defendants having provided additional statistical information at the front end of this matter, and seek to rectify that now.

local officials, like the Sheriff, need the flexibility on the ground to adapt to the rapidly changing public health emergency without the external limitations of a federal court injunction.  And the Sheriff has demonstrated here the success that can have.

In addition to COVID almost being eliminated from the current Jail population, additional facts have arisen - new positive cases are coming ***only from new bookings***.  Any remaining COVID cases at the jails are due to ***community*** spread before arriving at the jail, and not from being infected in the Jail.  *See* Chiang Decl. ¶¶ 5-7.  The Sheriff, of course, has no control over the health status of anyone arrested by the Sheriff's department or the numerous other arresting agencies that utilize the Jail.  This significant change of circumstances can, we hope, show this Court that the Sheriff is not deliberately indifferent to the inmates in his charge, but rather, has provided extraordinary care, management and mitigation of this pandemic.

In addition, the Sheriff has submitted numerous photographs and declarations demonstrating, *inter alia*:

(1)     The free commissary packages provided to all inmates beginning April 9 due to the COVID pandemic (*See* Cpt. Von Nordheim Decl. ¶ 4(i), Exh. I);

(2)     The amount of toilet paper, soap, and disinfectant available to inmates (*See* Cpt. Rich Decl. ¶ 4(c)-(g), Exh. C – G; *See* Cpt. Ramirez Decl. ¶ 4(c)-(g), Exh. C – G;);

(3)     The social distancing measures put in place to implement as much social distancing as practicable (*See* Cpt. Rich Decl. ¶ 4 (a)-(b), Exh. A-B);

(4)     The limited number of people in dayrooms and facial coverings provided to allow for safe social distancing measures (*See* Sgt. Hennessey Decl. ¶¶ 4(b)(ii), (d)(ii), (g)(iii), (n)(ii), (n)(viii).

This entire matter turns on current conditions at the Jail to determine if prospective relief is "necessary" to remedy the violation of a federal right, and current conditions demonstrate that the Sheriff has successfully mitigated COVID under implemented protocols, without the need for court intervention.  The Sheriff respectfully requests that this

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

Court consider the exceptional performance his Department has displayed in aggressively combatting COVID in the Jails.  Accordingly, the Court should immediately dissolve the preliminary injunction because current facts and circumstances no longer support the basis for the Order, or alternatively, allow Defendants the opportunity to present additional evidence in a time-shortened hearing.

### 2.     *Plaintiffs No Longer Face Any Prospect of Irreparable Harm*

As noted above, the "369 cases of COVID-19 in the Jail," was a cumulative number representing ***every case ever had*** at the Jails since COVID emerged.  The Court found that "without additional measures to abate the spread, more inmates will contract the disease." ECF 65, p. 18.  Those findings have been dramatically impacted by the significant change in circumstances and facts since the Court issued its Order.

The daily rate has continued to plunge significantly.  Prior to and following this Court's order, the ***daily rate*** continued to plummet at the Jails (even while ***cumulative*** numbers would continue to rise) because the Sheriff aggressively and early-on, implemented the CDC Interim Guidelines.  Because there is ***ZERO transmission*** of the virus currently spreading in the Jails, Plaintiffs no longer face any prospect of irreparable harm because—at least while at the Jail in the Sheriff's care—they are isolated from community transmission of the virus that we all face in the general public.  While it is true that two named medically vulnerable Plaintiffs contracted the virus (*over a month ago*), they have now successfully recovered without any need for hospitalization.  *See* Decl. of Erin Winger ¶¶ 7(e)(iv), (h)(iv).  Moreover, Plaintiffs submitted declarations from at least 30 different inmates in the Jail.  Only 5, including the 2 previously mentioned medically vulnerable Plaintiffs, (out of the 30) inmates who provided declarations, tested positive for COVID.  All of those 5 inmates tested positive over a month ago, and all have successfully recovered without hospitalization.  *Id.* ¶¶ 7 (k), (l), (q).  There is no remaining element of irreparable harm as to Plaintiffs, individually or as a class, to support the Order.

Just by way of one example, whether "objective deliberate indifference" is analyzed under the Fourteenth Amendment's standard outlined in *Gordon v. County of Orange,* 888

F.3d 1118, 1124 (9th Cir. 2018) (pretrial detainees) or the Eighth Amendment's "objectively sufficiently serious" deprivation prong (sentenced inmates), which requires a Plaintiff to demonstrate they are being "incarcerated under conditions posing a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), where Defendants have eliminated the transmission of COVID in the jails, and where COVID cases are represented solely by new arrestees, Defendants submit that under the current circumstances, Plaintiffs no longer meet either standard with respect to the risk of COVID-19 infection the inmates have ceased to face. See *Swain*, 2020 WL 3167628, at *5.

### 3. Comity Counsels Restraint Here and Warrants Presently Dissolving the Injunction

The comity doctrine counsels lower federal courts to resist engagement in certain cases despite falling within their jurisdiction.  The doctrine reflects:

> [A] proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways. Fair Assessment, 454 U.S., at 112, 102 S.Ct. 177 (quoting *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).

*Levin v. Commerce Energy, Inc*., 560 U.S. 413, 421 (2010) [int. quotations omitted].

Federal courts should resist administration of local jails without significant constitutional cause.  *South Bay Pentecostal Church v. Newsom*, No. 19A1044, 2020 WL 2813056 (U.S. May 29, 2020.)  The prospect of contempt presented when a local law enforcement agency is unable to take certain actions in the face of a federal injunction, dramatically limits the Sheriff's options for successfully managing the crisis.  It puts the Sheriff more toward managing legal exposure than maintaining laser focus on safety.  For instance, a requirement that the Sheriff maintain all inmates 6 feet or more apart, access to daily showers and laundry, daily temperature checks and COVID assessments of every

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

inmate[4], daily recreation, phone and video conferencing for quarantined inmates, while having to also sanitize between each use *and* ensure incompatible classifications of inmates do not mix, is a near impossible task. *See* Declaration of Sergeant Hennessey at ¶¶ 5-8, Exhibit A. But it is also an unnecessary one. Simply permitting two inmates who are both COVID-free to share a cell and recreate/dayroom with that other inmate is *not a factor* for contagion of COVID, and is no different than roommates who do not social distance 6 feet from each other at all times in their shared COVID-free living situation. It allows the Sheriff to effectively utilize the available physical space and to provide adequate and necessary quarantine to the inmates that *do* need it, such as new arrestees and anyone who might subsequently display symptoms or test positive. The Sheriff has demonstrated the capacity to effectively mitigate COVID contagion in the jails without the need for federal court supervision by injunction.

## D. DISSOLVING THE INJUNCTION WILL PRESERVE THE *STATUS QUO* AND NOT HARM PLAINTIFFS

An order dissolving the injunction will preserve the *status quo*. The first known case of COVID in the Jail occurred around March 24, 2020. ECF 1-26, p. 2. The CDC Guidelines were issued a day prior, March 23, when Sheriff began implementing them. In March and April, when COVID first entered the Jail, like the community, the Jail was experiencing a lack of available testing. Testing for asymptomatic inmates was not readily available until the end of April. On May 5, when testing had significantly increased, there were 219 active COVID cases within the Jail[5]. ECF 65, p. 16. At the time of the Order

---

[4] Not to mention, several medically vulnerable Plaintiffs share in Defendants' concerns of increased face-to-face contact among inmates and staff. *See* ECF's 41-19 ¶ 13, 41-30 ¶ 10, 41-27, ¶ 8. Defendants have raised these concerns as well as several provisions of the Court's Order create more face-to-face interaction thereby increasing the risk of COVID transmission from staff (who leave the Jail everyday) to inmates (who are isolated in the Jail).

[5] Appellants took the district court's chart, calculated the number of *current* COVID cases for each day by taking the Positive Tests column and subtracting the Recovered column to get the *current number* of COVID cases for a given day.

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

(May 26), there were 67 current cases. *Id.* As of today's date, there are 6 active cases and all from new arrestees. Chiang Dec. ¶ 5-6. The daily rate has decreased from 219 at peak to 6 today (and none due to transmission at the jail). This sharp trending decline in positive cases is due to the Sheriff's early and effective implementation of CDC Guidelines.[6]

In considering a balancing of the interests and harms, Plaintiffs will not be harmed in the absence of the injunction. In truth, they would be in a less risky, healthier and safer environment (and one the inmates prefer, see footnote 4) without the Order, because the Order creates more face-to face contact and requires the Sheriff to compromise safety and security of inmates and staff in order to comply with the letter of the Order. Any argument by Plaintiffs that a dissolution of the injunction will accelerate the COVID contagion is contradicted by the current data, the law, and common sense. It is also belied by the Sheriff's demonstrated effective management of this virus for the protection of the inmates in his care. The inmates are not currently at ***any*** measurable risk of exposure to COVID at the Jails at present that warrant a mandatory injunction and the Order should be dissolved.[7]

Dissolving the injunction will simply revert to the *status quo*, a *status quo* where inmates are cared for, appropriately distanced, tested, and protected, in a clean and hygienic environment.

## IV. CONCLUSION

Defendants, Plaintiffs and this Court all want what is best for the inmates at the Orange County Jails—to be free of unnecessary risk of exposure to COVID. The Sheriff has met his obligation to provide a safe environment for the inmates in his care. The May 26, 2020 injunction was issued at a time of rapidly declining COVID numbers. The Court

---

[6] On the date of the hearing (May 19) there were 161 current cases, versus the date of the Order (May 26) there were 67 current cases.

[7] Plaintiffs will predictably again assert in response to this motion that two of their Plaintiffs contracted COVID. Yet, relying on that fact alone, when both individuals have fully recovered without the need for hospitalization creates a no-win situation for the Sheriff here. Even if there is currently no exposure risk to inmates in the jail, Plaintiffs reliance on the fact that there was ***at one time*** is not something the Sheriff can undo, but it is also not the current state of the facts.

understandably, when presented with **cumulative** numbers that continued to rise without the necessary context, was concerned.  The Court could not foresee in May that the Sheriff would completely **eliminate** COVID transmission at the Jail by the end of June.

Defendants here respectfully and earnestly ask this Court to dissolve the May 26, 2020 injunction to allow the Sheriff to continue to nimbly respond to this virus or, in the alternative, that Defendants be granted a hearing on a time-shortened basis to provide the Court further evidence of the same.

DATED: June 19, 2020

Respectfully submitted,

LEON J. PAGE, COUNTY COUNSEL
KAYLA N. WATSON, DEPUTY

By: _____/s/_____
    Kayla N. Watson, Deputy

Attorneys for Defendants,
Don Barnes and County of Orange

| Case Id: | 30-2020-01141117-CU-WM-CXC |
|---|---|
| Case Title: | CYNTHIA CAMPBELL VS. DON BARNES, IN HIS OFFICIAL CAPACITY AS SHERIFF OF ORANGE COUNTY, CALIFORNIA |
| Case Type: | WRIT OF MANDATE |
| Filing Date: | 06/02/2020 |
| Category: | CIVIL - UNLIMITED |

Register Of Actions:

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| 1 | E-FILING TRANSACTION 2914554 RECEIVED ON 06/02/2020 02:16:02 PM. | 06/04/2020 | | *NV* | |
| 2 | PETITION FOR WRIT OF MANDATE FILED BY CAMPBELL, CYNTHIA; CASTILLO, MONIQUE; GONZALEZ, SANDY; ORTIZ, CECIBEL CARIDAD; TRACE, MARK; WAGNER, DON ON 06/02/2020 | 06/02/2020 | | 52 pages | |
| 3 | CIVIL CASE COVER SHEET FILED BY CAMPBELL, CYNTHIA; CASTILLO, MONIQUE; GONZALEZ, SANDY; ORTIZ, CECIBEL CARIDAD; TRACE, MARK; WAGNER, DON ON 06/02/2020 | 06/02/2020 | | 3 pages | |
| 4 | SUMMONS ISSUED AND FILED FILED BY CAMPBELL, CYNTHIA; CASTILLO, MONIQUE; GONZALEZ, SANDY; ORTIZ, CECIBEL CARIDAD; TRACE, MARK; WAGNER, DON ON 06/02/2020 | 06/02/2020 | | 1 pages | |
| 5 | PAYMENT RECEIVED BY LEGALCONNECT FOR 194 - COMPLAINT OR OTHER 1ST PAPER, 34 - COMPLEX CASE FEE - PLAINTIFF IN THE AMOUNT OF 1,435.00, TRANSACTION NUMBER 12735322 AND RECEIPT NUMBER 12561601. | 06/04/2020 | | 1 pages | |
| 6 | CASE ASSIGNED TO JUDICIAL OFFICER WILSON, PETER ON 06/02/2020. | 06/02/2020 | | 1 pages | |
| 7 | PROPOSED ORDER RECEIVED ON 06/05/2020 | 06/05/2020 | | 3 pages | |
| 8 | E-FILING TRANSACTION 41089974 RECEIVED ON 06/05/2020 01:32:38 PM. | 06/05/2020 | | *NV* | |

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| 9 | EX PARTE APPLICATION - OTHER (RESTRAINING ORDER) FILED BY ORTIZ, CECIBEL CARIDAD ON 06/05/2020 | 06/05/2020 | | 5 pages | |
| 10 | DECLARATION - OTHER (OF CASSANDRA STUBBS) FILED BY ORTIZ, CECIBEL CARIDAD ON 06/05/2020 | 06/05/2020 | | 5 pages | |
| 11 | MEMORANDUM OF POINTS AND AUTHORITIES FILED BY ORTIZ, CECIBEL CARIDAD ON 06/05/2020 | 06/05/2020 | | 39 pages | |
| 12 | REQUEST FOR JUDICIAL NOTICE FILED BY ORTIZ, CECIBEL CARIDAD ON 06/05/2020 | 06/05/2020 | | 8 pages | |
| 13 | DECLARATION FOR TEMPORARY RESTRAINING ORDER FILED BY ORTIZ, CECIBEL CARIDAD ON 06/05/2020 | 06/05/2020 | | *NV* | |
| 14 | APPENDIX OF AUTHORITIES FILED BY ORTIZ, CECIBEL CARIDAD ON 06/05/2020 | 06/05/2020 | | 224 pages | |
| 15 | PAYMENT RECEIVED BY LEGALCONNECT FOR 36 - MOTION OR OTHER (NOT 1ST) PAPER REQUIRING A HEARING IN THE AMOUNT OF 60.00, TRANSACTION NUMBER 12736022 AND RECEIPT NUMBER 12562301. | 06/05/2020 | | 1 pages | |
| 16 | MOTION FOR TEMPORARY RESTRAINING ORDER SCHEDULED FOR 06/08/2020 AT 01:30:00 PM IN CX102 AT CIVIL COMPLEX CENTER. | 06/05/2020 | | *NV* | |
| 17 | CASE REASSIGNED TO WALTER SCHWARM EFFECTIVE 06/05/2020. | 06/05/2020 | | *NV* | |
| 18 | THIS CASE IS REASSIGNED TO THE HONORABLE WALTER SCHWARM FOR ALL PURPOSES. | 06/05/2020 | | *NV* | |
| 19 | MINUTES FINALIZED FOR CHAMBERS WORK 06/05/2020 01:55:00 PM. | 06/05/2020 | | 1 pages | |
| 20 | CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE | 06/05/2020 | | 2 pages | |
| 21 | MOTION FOR TEMPORARY RESTRAINING ORDER REASSIGNED TO C19 AT CENTRAL JUSTICE CENTER ON 06/08/2020 AT 01:30:00 PM. | 06/05/2020 | | *NV* | |

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|-----|--------|-------------|--------------|----------|--------|
| 22 | MOTION FOR TEMPORARY RESTRAINING ORDER SCHEDULED FOR 06/08/2020 AT 01:30:00 PM IN C19 AT CENTRAL JUSTICE CENTER. | 06/05/2020 | | *NV* | |
| 23 | E-FILING TRANSACTION 3912153 RECEIVED ON 06/08/2020 09:06:37 AM. | 06/08/2020 | | *NV* | |
| 24 | DECLARATION IN SUPPORT FILED BY ORTIZ, CECIBEL CARIDAD ON 06/08/2020 | 06/08/2020 | | 1 pages | ☐ |
| 25 | PROOF OF SERVICE BY MAIL FILED BY ORTIZ, CECIBEL CARIDAD ON 06/08/2020 | 06/08/2020 | | 2 pages | ☐ |
| 26 | CASE REASSIGNED TO THOMAS DELANEY EFFECTIVE 06/08/2020. | 06/08/2020 | | *NV* | |
| 27 | PEREMPTORY CHALLENGE UNDER C.C.P. 170.6 AS TO THE HONORABLE WALTER P. SCHWARM FILED. | 06/08/2020 | | *NV* | |
| 28 | THIS CASE IS REASSIGNED TO THE HONORABLE THOMAS A. DELANEY FOR ALL PURPOSES. | 06/08/2020 | | *NV* | |
| 29 | MINUTES FINALIZED FOR CHAMBERS WORK 06/08/2020 11:25:00 AM. | 06/08/2020 | | 1 pages | ☐ |
| 30 | CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE | 06/08/2020 | | 2 pages | ☐ |
| 31 | E-FILING TRANSACTION 41090213 RECEIVED ON 06/08/2020 12:47:05 PM. | 06/08/2020 | | *NV* | |
| 32 | OPPOSITION FILED BY DON BARNES, IN HIS OFFICIAL CAPACITY AS SHERIFF OF ORANGE COUNTY, CALIFORNIA ON 06/08/2020 | 06/08/2020 | | 17 pages | ☐ |
| 33 | DECLARATION IN SUPPORT FILED BY DON BARNES, IN HIS OFFICIAL CAPACITY AS SHERIFF OF ORANGE COUNTY, CALIFORNIA ON 06/08/2020 | 06/08/2020 | | 19 pages | ☐ |
| 34 | DECLARATION IN SUPPORT FILED BY DON BARNES, IN HIS OFFICIAL CAPACITY AS SHERIFF OF ORANGE COUNTY, CALIFORNIA ON 06/08/2020 | 06/08/2020 | | 5 pages | ☐ |
| 35 | DECLARATION IN SUPPORT FILED BY DON BARNES, IN HIS OFFICIAL CAPACITY AS SHERIFF OF ORANGE COUNTY, CALIFORNIA ON 06/08/2020 | 06/08/2020 | | 17 pages | ☐ |

**EXHIBIT A**

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| 36 | DECLARATION IN SUPPORT FILED BY DON BARNES, IN HIS OFFICIAL CAPACITY AS SHERIFF OF ORANGE COUNTY, CALIFORNIA ON 06/08/2020 | 06/08/2020 | | 23 pages | ☐ |
| 38 | EX PARTE SCHEDULED FOR 06/10/2020 AT 01:30:00 PM IN C24 AT CENTRAL JUSTICE CENTER. | 06/08/2020 | | *NV* | |
| 39 | THE EX PARTE IS SCHEDULED FOR 06/10/2020 AT 01:30 PM IN DEPARTMENT C24. | 06/08/2020 | | *NV* | |
| 40 | MINUTES FINALIZED FOR CHAMBERS WORK 06/08/2020 01:36:00 PM. | 06/08/2020 | | 1 pages | ☐ |
| 41 | CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE | 06/08/2020 | | 2 pages | ☐ |
| 42 | E-FILING TRANSACTION 3912254 RECEIVED ON 06/08/2020 12:56:53 PM. | 06/08/2020 | | *NV* | |
| 43 | REQUEST FOR JUDICIAL NOTICE FILED BY DON BARNES, IN HIS OFFICIAL CAPACITY AS SHERIFF OF ORANGE COUNTY, CALIFORNIA ON 06/08/2020 | 06/08/2020 | | 147 pages | ☐ |
| 44 | OBJECTION FILED BY DON BARNES, IN HIS OFFICIAL CAPACITY AS SHERIFF OF ORANGE COUNTY, CALIFORNIA ON 06/08/2020 | 06/08/2020 | | 35 pages | ☐ |
| 45 | CASE REASSIGNED TO MELISSA MCCORMICK EFFECTIVE 06/08/2020. | 06/08/2020 | | *NV* | |
| 46 | EX PARTE REASSIGNED TO C13 AT CENTRAL JUSTICE CENTER ON 06/10/2020 AT 01:30:00 PM. | 06/08/2020 | | *NV* | |
| 47 | EX PARTE SCHEDULED FOR 06/10/2020 AT 01:30:00 PM IN C13 AT CENTRAL JUSTICE CENTER. | 06/08/2020 | | *NV* | |
| 48 | THIS CASE IS REASSIGNED TO THE HONORABLE MELISSA R. MCCORMICK FOR ALL PURPOSES. | 06/08/2020 | | *NV* | |
| 49 | EX PARTE CONTINUED TO 06/10/2020 AT 01:30 PM IN DEPARTMENT . | 06/08/2020 | | *NV* | |
| 50 | MINUTES FINALIZED FOR CHAMBERS WORK 06/08/2020 02:59:00 PM. | 06/08/2020 | | 1 pages | ☐ |
| 51 | CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE | 06/08/2020 | | 2 pages | ☐ |

EXHIBIT A

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| 53 | MELISSA R. MCCORMICK RECUSED. | 06/09/2020 | | *NV* | |
| 55 | MINUTES FINALIZED FOR CHAMBERS WORK 06/09/2020 09:04:00 AM. | 06/09/2020 | | 1 pages | |
| 56 | CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE | 06/09/2020 | | 2 pages | |
| 57 | CASE REASSIGNED TO CHARLES MARGINES EFFECTIVE 06/10/2020. | 06/10/2020 | | *NV* | |
| 58 | THE HONORABLE MELISSA R. MCCORMICK RECUSED HERSELF. | 06/10/2020 | | *NV* | |
| 59 | THIS CASE IS REASSIGNED TO THE HONORABLE CHARLES MARGINES FOR ALL PURPOSES. | 06/10/2020 | | *NV* | |
| 60 | MINUTES FINALIZED FOR CHAMBERS WORK 06/10/2020 03:31:00 PM. | 06/10/2020 | | 1 pages | |
| 61 | CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE | 06/10/2020 | | 2 pages | |

Participants:

| Name | Type | Assoc | Start Date | End Date |
|---|---|---|---|---|
| DON WAGNER | PETITIONER | | 06/04/2020 | |
| SCHONBRUN, SEPLOW, HARRIS, HOFFMAN & Z | ATTORNEY | | 06/04/2020 | |
| CYNTHIA CAMPBELL | PETITIONER | | 06/04/2020 | |
| MARK TRACE | PETITIONER | | 06/04/2020 | |
| ORANGE COUNTY COUNSEL | ATTORNEY | | 06/08/2020 | |
| CECIBEL CARIDAD ORTIZ | PETITIONER | | 06/04/2020 | |
| SANDY GONZALEZ | PETITIONER | | 06/04/2020 | |
| DON BARNES, IN HIS OFFICIAL CAPACITY A | RESPONDENT | | 06/04/2020 | |
| MONIQUE CASTILLO | PETITIONER | | 06/04/2020 | |

Hearings:

| Description | Date | Time | Department | Judge |
|---|---|---|---|---|

Print this page

EXHIBIT A
Page 23

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

# CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States employed in the County of Orange, over 18 years old and that my business address is 333 W. Santa Ana Blvd., Ste. 407, Santa Ana, California  92701; and my e-mail address is Marzette.lair@ coco.ocgov.com.  I am not a party to the within action.

BY CM/ECF: On June 19, 2020, I caused the document DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION TO IMMEDIATELY DISSOLVE PRELIMINARY INJUNCTION OR ALTERNATIVELY SET EXPEDITED HEARING TO DISSOLVE PRELIMINARY INJUNCTION to be served upon all counsel of record in this action who are registered with the United States District Court's CM/ECF system and listed below by utilizing the United States District Court's CM/ECF system:

| | |
|---|---|
| MITCHELL KAMIN, ESQ.<br>mkamin@cov.com<br>AARON LEWIS, ESQ.<br>alewis@cov.com<br>BRITTANY BENJAMIN, ESQ.<br>bbenjamin@cov.com<br>COVINGTON & BURLING LLP<br><br>CASSANDRA STUBBS, ESQ.<br>cstubbs@aclu.org<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br><br>STACEY GRIGSBY, ESQ.<br>sgrigsby@cov.com<br>AMIA TRIGG, ESQ.<br>atrigg@cov.com<br>COVINGTON & BURLING LLP<br><br>OLIVIA ENSIGN, ESQ.<br>oensign@aclu.org<br>CRISTINA BECKER, ESQ.<br>cbecker@aclu.org<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION | JOHN WASHINGTON, ESQ.<br>jwashington@sshhlaw.com<br>SCHONBRUN, SEPLOW, HARRIS,<br>HOFFMAN & ZELDES LLP<br><br>PETER ELIASBERG, ESQ.<br>peliasberg@aclu.org<br>AMERICAN CIVIL LIBERTIES FUND OF<br>SOUTHERN CALIFORNIA<br><br>PAUL HOFFMAN, ESQ.<br>hoffpaul@aol.com<br>UNIVERSITY OF CALIFORNIA, IRVINE<br>SCHOOL OF LAW CIVIL RIGHTS<br>LITIGATION CLINIC<br><br>CARL TAKEI, ESQ.<br>ctakei@aclu.org<br>SOMIL TRIVEDI, ESQ.<br>strivedi@aclu.org<br>CLARA SPERA, ESQ.<br>cspera@aclu.org<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION<br><br>ZOE BRENNAN-KROHN, ESQ.<br>zbrennan-krohn@aclu.org<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION |

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed in Santa Ana, California this 19th day of June, 2020

_____s/Marzette L. Lair_____