UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **SACV 20-835 JGB (SHKx)** | Date | July 7, 2022 |
| Title | *Melissa Ahlman, et al. v. Don Barnes, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) GRANTING Plaintiffs' Motion to Certify Class (Dkt. No. 236); (2) GRANTING Plaintiffs' Joint Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 237); and (3) VACATING the July 11, 2022 hearing (IN CHAMBERS)

Before the Court is Motion to Certify Class ("Class Cert" Dkt. No. 236) and Motion for Preliminary Approval of Class Action Settlement filed by Plaintiffs ("Motion," Dkt. No. 237). The Court finds these matters appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the motions, the Court GRANTS Class Cert, GRANTS the Motion, and VACATES the hearing scheduled for July 11, 2022.

## I.   BACKGROUND

On April 30, 2020, Plaintiffs Melissa Ahlman, Pedro Bonilla, Cynthia Campbell, Javier Esparza, Daniel Kauwe, Mark Trace and Don Wagner ("Plaintiffs") filed a complaint against Defendants Don Barnes and Orange County ("Defendants"). ("Complaint," Dkt. No. 1.) On May 26, 2020, the Court issued an injunction to compel COVID-19 mitigation practices within Orange County jails. ("PI Order," Dkt. No. 65.) Defendants filed a notice of appeal on May 28, 2020. (Dkt. No. 68.) On June 2, 2020, the Court denied Defendants' motion to stay pending appeal. (Dkt. No. 72.) On June 3, 2020, Defendants moved to dismiss. (Dkt. No. 73.)

Plaintiffs filed an amended complaint on June 12, 2020. ("FAC," Dkt. No. 79.) The FAC asserts five causes of action: (1) unconstitutional conditions of confinement in violation of the Fourteenth Amendment; (2) unconstitutional punishment in violation of the Fourteenth

Amendment; (3) unconstitutional conditions of confinement in violation of the Eighth Amendment; (4) discrimination on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA"); and (5) discrimination on the basis of disability in violation of section 504 of the Rehabilitation Act. (See FAC.)

On June 12, 2020, the Ninth Circuit denied Defendants' emergency motion to stay the injunction pending appeal and remanded to this Court to determine in the first instance whether changed circumstances warranted modification or dissolution of the preliminary injunction. (Dkt. No. 80.) On June 24, 2020, the Court denied Defendants' ex parte application to dissolve the injunction and granted Plaintiffs' motion for expedited discovery. (Dkt. No. 93.) Defendants then appealed the Court's denial of Defendants' ex parte application to dissolve the injunction on June 29, 2020 (Dkt. No. 94), which the appellate court denied for lack of jurisdiction (Dkt. No. 95). On August 5, 2020, the Supreme Court reversed the Ninth Circuit's June 12, 2020 denial of Defendants' motion to stay and stayed the injunction pending disposition of the appeal and disposition of the petition for a writ of certiorari. Barnes v. Ahlman, --- U.S.----, 140 S. C. 2620, 2620 (2020).

On July 19, 2021, Defendants moved to dismiss the FAC. (Dkt. No. 171.) On August 13, 2021, Defendants moved to stay the case. (Dkt. No. 181.) On September 17, 2021, the Court denied both motions. ("MTD and Stay Order," Dkt. No. 189.)

On December 10, 2021, the Ninth Circuit dismissed as moot Defendants' appeal. Ahlman v. Barnes, 20 F.4th 489, 492 (9th Cir. 2021), cert. denied, --- S. Ct. ----, 2022 WL 1738610 (Mem). The panel held that the May 26, 2020 injunction and provisional class certification were no longer in effect because the Prison Litigation Reform Act ("PLRA") provides that any preliminary injunction automatically expires 90 days after issuance, absent subsequent final action. Id. at 491.

On May 31, 2022, Plaintiffs filed an unopposed motion to certify the class. (See Class Cert.) In support of the Class Cert, Plaintiffs filed the following documents:

- Declaration of Marcel Irizarry, ("Irizarry Decl.," Dkt. No. 236-2);
- Declaration of Anthony Thomas Garcia, ("Garcia Decl.," Dkt. No. 236-3); and
- Declaration of Jorge Sosa, ("Sosa Decl.," Dkt. No. 236-4).

On May 31, 2022, Plaintiffs filed a joint motion for preliminary approval of class settlement agreement. (See Motion.) In support of the Motion, Plaintiffs filed the following documents:

- Class Action Settlement Agreement, ("Agreement," Dkt. No. 237-1); and
- Proposed Notice to Class ("Class Notice," Dkt. No. 237-2).

## II. LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class. La Fleur v. Med. Mgmt. Int'l, Inc., 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014) (internal quotations omitted). A court may certify a class if the plaintiff demonstrates the class meets the requirements of Federal Rules of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).[1] See Fed. R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a). Rule 23(b) requires one of the following: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication. Fed. R. Civ. P. 23(b).

Class action settlements must be approved by the court. See Fed. R. Civ. P. 23(e). At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Id. "The settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original). To determine whether a settlement agreement is potentially fair, a court considers the following factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

## III. CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS

The parties seek certification of the following proposed settlement class: "all current and future detainees incarcerated in the Orange County Jail." (Dkt. No. 236-5.) The parties seek to name Plaintiffs Marcel Irizarry, Anthony Thomas Garcia, and Jorge Sosa as Class representatives. (Id.)

---

[1] All references to "Rule" in this Order refer to the Federal Rules of Civil Procedure unless otherwise noted.

### A. Requirements of Rule 23(a)

#### 1. Numerosity

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). To be impracticable, joinder must be difficult or inconvenient, but need not be impossible. Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012). There is no numerical cutoff for sufficient numerosity. Id. However, 40 or more members will generally satisfy the numerosity requirement. Id. A plaintiff has the burden to establish that this requirement is satisfied. United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co., 593 F.3d 802, 806 (9th Cir. 2010). The proposed class will likely include over 3,200 members. (Class Cert at 3.) The Court concludes that the numerosity requirement is satisfied.

#### 2. Commonality

The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). All class members' claims flow from the same alleged injury—Defendants' allegedly inadequate COVID-19 mitigation efforts in the jail. Plaintiffs seek institution-wide injunctive relief. Accordingly, the relevant questions such as deliberate indifference will be decided on a classwide, rather than individual, basis. See Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001) ("Commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."). The Court therefore finds Plaintiffs have established commonality.

#### 3. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover No. Am., 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Hanon, 976 F.2d at 508). Because typicality is a permissive standard, the claims of the named plaintiff need not be identical to those of the other class members. Hanlon, 150 F.3d at 1020. Plaintiffs argue their claims are typical of the Class because they were subject to the same policies as the Class members. The Court finds that Plaintiffs are typical of the proposed Class.

#### 4. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, the court should ask whether the proposed class representative and her

counsel have any conflicts of interest with any class member and whether the proposed class representative and her counsel will prosecute the action vigorously on behalf of the class. Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011). Plaintiffs represent they have no conflicts and Plaintiffs' counsel have vigorously prosecuted this action, and have experience litigating similar class actions in the same area of law. (See Motion; Class Cert.) The Court finds that Plaintiffs satisfy the adequacy requirement.

### B. Requirements of Rule 23(b)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Here, Plaintiffs argue conditional certification is appropriate under Rule 23(b)(2). (Class Cert at 5-6.)

Rule 23(b)(2) permits certification of a class seeking declaratory or injunctive relief where the opposing party has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Fed. R. Civ. P. Rule 23(b)(2). In the Ninth Circuit, even when a set of uniform policies and practices "may not affect every member of [a] proposed class…in exactly the same way, they constitute shared grounds for all inmates in [a] proposed class…" Parsons v. Ryan, 754 F.3d 657, 688 (9th Cir. 2014) (citing Rodriguez v. Hayes, 591 F.3d 1105, 1125-26 (9th Cir 2010; Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir. 1998)). This action concerns policies and practices applicable to the entire Class that subjects them to a risk of harm and discriminatory treatment. The Court concludes Rule 23(b)(2)'s requirements are met.

## IV. SETTLEMENT AGREEMENT

### A. Settlement Class

The Class includes "all persons who are being or will be confined in the Orange County Jail, including any facilities where the Defendants in the future may confine persons in Defendants' legal custody." (Agreement ¶ 5.)

### B. Settlement Terms

The Agreement provides that the Jail will continue to operate consistent with the applicable COVID-19 guidance for correctional facilities issued by the U.S. Centers for Disease Control and Prevention ("CDC"), the relevant orders from the California Department of Public Health ("CDPH"), any rules and recommendations issued by Public Health, or any other governing agency related to COVID-19 and applicable in correctional facilities (the "Applicable Guidance"). Agreement §§ A(2), (4), (7), F(2).

Defendants will continue to provide adequate medical care and treatment for COVID-19 to Class members as recommended by the Applicable Guidance, including providing free

vaccines, therapeutic antiviral medications, and COVID-19 testing; accessible patient education materials regarding COVID-19 and incentives for Class members to be fully vaccinated against COVID-19; and transfer to outside health care providers as deemed necessary by the Jail's Medical Director.  Id. §§ F(4), G, M.  Defendants will continue to provide Class members, including detainee workers, reasonable access to personal hygiene supplies, soap, sanitizer, masks, in addition to other personal protective equipment ("PPE") recommended by Applicable Guidance.  Id. §§ F(5)-(6), I(1)-(2).  Defendants will continue to operate the Jail's chow hall and deliver hot food trays as recommended by the Jail's Medical Director and ensure the food complies with Title 15, section 1240 of the California Code of Regulations.  Id. § F(7).

The Agreement sets forth the parameters for the operation of testing, quarantine, and isolation periods for all Class members, including identifying all Class members who have one or more medical conditions or comorbidities that are associated with a higher risk of serious complications and/or death due to COVID-19 infection; and the non-punitive operation of isolation/quarantine units, including isolated/quarantined Class members' out-of-cell time and access to books, reading materials, television, showers, telephones, their personal items, and commissary that would be materially similar to what Class members would have access to but for COVID-19 infection.  Id. §§ A(17)-(18), (21), (25), J.  Defendants agree that they will continue to maintain the Jail's population as recommended by the Jail's Medical Director and Applicable Guidance, and will continue to make reasonable efforts to ensure that Class members are able to physically distance (at least six feet from other individuals) where practicable, as recommended by Applicable Guidance.  Id. § L.

Class Counsel will monitor compliance with the Agreement through weekly data reports.  Agreement §§ O(1)-(2).  Beginning July 21, 2022, Defendants will provide weekly data reports that, among other things, details the rates of testing, infection, hospitalization, quarantine, isolation, vaccination of Class members, and testing and infection rates of Jail staff.  Id.  Class Counsel may request video footage and/or Inmate Activity Logs if Counsel receives reliable information related to noncompliance with the Agreement.  Id. § O(3).

The parties agree that the Agreement will automatically terminate upon the occurrence of any one of the following events: (a) the lifting, rescinding, or nullifying of the State of California's March 4, 2020 Emergency Proclamation on COVID-19; (b) the CDPH's announcement that the State of California is in an endemic state regarding COVID-19; (c) six months after the Court's final approval of the Agreement, unless any motion is pending before the Court; or (d) February 1, 2023.  Agreement § P.

1. **Class Representatives**

The parties seek to name Plaintiffs Marcel Irizarry, Anthony Thomas Garcia, and Jorge Sosa as representatives of the Class.  (Dkt. No. 236-5.)

### 2. Attorneys' Fees and Costs

Defendants agree to pay Class Counsel and Munger Tolles & Olsen, LLP the total sum of $3,700,000.00 in attorneys' fees and costs in complete resolution of (1) <u>Campbell et al. v. Barnes</u>, Case No. 30-2020-01141117, filed in the Orange County Superior Court of California, including the pending appeal in the California Court of Appeal, Case No. G061096 (the "<u>Campbell</u> Case") and (1) <u>Ahlman, et al. v. Barnes, et al.</u>, Case No. 8:30-cv-00835-JGB-SHK, (the "<u>Ahlman</u> Case"). (Agreement § D(1).) Payment is contingent on the Court's Final Approval Order as set forth in Sections E and R of the Agreement. (<u>Id.</u>) The payment represents $2,974,082.00 in attorneys' fees and $10,989.61 in costs in complete satisfaction of Defendants' obligation in the <u>Campbell</u> Case and $714,928.39 in attorneys' fees and costs for complete satisfaction of their obligations in the <u>Ahlman</u> case. (<u>Id.</u>)

### C. Release

All settlement class members who do not request exclusion agree to release:

In consideration for the provisions of the Agreement, Plaintiffs, including but not limited to their present and former heirs, assigns, representatives, attorneys, and agents, hereby release and forever discharge the Defendants, as well as its present and former employees, agents, managers, offices, directors, Board Members, attorneys, departments, whether previously or hereafter affiliated in any manner (the "Released Parties"), from and against any and all claims for injunctive relief or attorneys' fees and costs based on the events detailed in the <u>Ahlman</u> Case and <u>Campbell</u> Case (hereinafter, the "Released Claims").

(Agreement § R.)

### D. Notice

Within 48 hours of this Order, Defendants shall post the Notice throughout the Orange County Jail facilities in English, Spanish, Vietnamese, and in modes accessible to those with sensory disabilities for two weeks. (Agreement § E(3)(b).) Notice shall be posted in all housing areas, dayrooms, and next to all phones accessible to Detainees. The Notice will provide contact information for Class Counsel. (<u>Id.</u>) If any inmates object to the Agreement or attorneys' fees, they have may do so by **July 24, 2022**. Class Counsel will transcribe and present to the Court any class member comments and/or objections. (<u>Id.</u>) Any recordings of the objections provided to Class Counsel, if they are recorded, shall be maintained, and made available to Defendants, upon their request. (<u>Id.</u>)

The Notice period shall be fourteen days from the posting of the Notice. (Agreement § E(3)(c).) The parties agree that Class members do not have a right to opt out from this Agreement. (Agreement § E (4).)

## V.   PRELIMINARY APPROVAL OF THE SETTLEMENT

"[Rule 23] requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon, 150 F.3d at 1026.  To determine whether a settlement agreement meets these standards, the court considers a number of factors, including "the strength of the Plaintiffs' case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." Stanton, 327 F.3d at 959 (internal citations omitted).  The settlement may not be a product of collusion among the negotiating parties.  In re Mego Fin, Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"At the preliminary approval stage, some of the factors cannot be fully assessed.  Accordingly, a full fairness analysis is unnecessary." Litty v. Merrill Lynch & Co., 2015 WL 4698475, *8 (C.D. Cal. Apr. 27, 2015).  Rather, the court need only decide whether the settlement is potentially fair, Acosta, 243 F.R.D. at 386, in light of the strong judicial policy in favor of settlement of class actions.  Class Plaintiffs, 955 F.2d 1276.  "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 15 F.3d at 1027.

### A.  Extent of Discovery and Stage of the Proceedings

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta, 243 F.R.D. at 396 (internal quotation marks omitted).  The parties engaged in discovery from the summer of 2020 until January 2022, when they agreed to stay discovery and enter settlement negotiations.  (Motion at 2.)  Since then, the parties have engaged in multiple days of extensive arms-length negotiations, including multiple days of mediation before Magistrate Judge Shashi H. Kewalramani.  (Id. at 3.)  The parties have actively litigated this case since its filing.  The Court finds that this factor weighs in favor of preliminary approval.

### B.  Strength of Case and Risk, Expense, Complexity, and Likely Duration of Litigation

Plaintiffs argue that the outcome of litigation and extent of any relief the Class might receive if the case went to trial is uncertain.  (Motion at 9.)  Further proceedings, such as pre-trial motions, trial, and appeals will impose risks, costs, and a substantial delay in any potential future remedy.  (Id.)  The risk, expense, complexity, and likely duration of further litigation weigh in favor of preliminary approval.  Given Defendants' potential defenses, it is not certain that

Plaintiffs would prevail.  The Agreement will conserve the resources of this Court and the parties, thus weighing in favor of preliminary approval.

### C. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted).  The American Civil Liberties Union Foundation, the American Civil Liberties Union Foundation of Southern California, Covington & Burling LLP, and Schonbrun Seplow Harris Hoffman & Zeldes, LLP have been vigorously litigating this matter for more than two years. (Class Cert at 5.)  Class Counsel have extensive knowledge regarding the claims in this action, as well as extensive experience in class actions and complex lawsuits, particularly in relation to civil rights actions on behalf of incarcerated people.  (Id.)  The Court finds this factor weighs in favor of preliminary approval.

### D. Collusion Between the Parties

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others."  Litty, 2015 WL 4698475, at *10 (quoting Staton, 327 F.3d at 961).  Based on a cursory review of the facts presented, it does not appear that there was collusion between the parties.

First, the settlement negotiations were conducted at arms-length.  The parties engaged in several mediations before Judge Kewalramani.  The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive.  See, e.g., Satchell v. Fed Ex. Corp., 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Second, the attorneys' fees award appears potentially reasonable. Class Counsel seek $3,700,000.00 in attorneys' fees.  (Agreement § D(1).)  The Court notes that the Motion is sparsely argued in some respects, with only minimal information provided on attorneys' fees. The Court advises the parties to clarify the basis for the agreed upon amount in the forthcoming motion for attorneys' fees.

## VI.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Class Cert and Motion. The Court ORDERS as follows:

1. The Agreement is preliminarily approved as fair, reasonable, and adequate for members of the Class.

2. The following Settlement Class is certified for settlement purposes only: all persons who are being or will be confined in the Orange County Jail, including any facilities where the Defendants in the future may confine persons in Defendants' legal custody.

3. The Court appoints Covington & Burling, LLC; Schronbrun, Seplow, Harris, Hoffman & Zeldes, LLP; the American Civil Liberties Union Foundation; and the American Civil Liberties Union Foundation of Southern California as counsel on behalf of the Settlement Class for purposes of settlement only.

4. The Court appoints Marcel Irizarry, Anthony Thomas Garcia, and Jorge Sosa as representatives of the Class for purposes of settlement only.

5. The Notice of Class Action Settlement is preliminarily approved. The Notice shall be posted, by the terms of the Agreement, for at least two weeks. The Agreement will be posted in all dayrooms accessible to detainees. If any Class Member requests a copy of the Agreement or this Order using an inmate message slip request form, or any other written or oral request, Defendants shall provide the Class Member a full copy of the proposed Agreement **and** Order within 24 hours of the request.[2] Defendants shall file a declaration within 48 hours of publication that affirms the Notice was published in accordance with this Order and the Agreement.

6. The hearing date for the Final Approval Hearing is hereby set for September 12, 2022 at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division located at 3470 12th Street, Riverside, California 92501.

7. The hearing set for July 11, 2022 is VACATED.

**IT IS SO ORDERED.**

---

[2] Plaintiffs provide that if any Class Member "requests a copy of the Agreement or the Order, using an inmate message slip request form or other written format from Defendants, Defendants shall provide the Class Member a full copy of the proposed Agreement or the Order within 24 hours of receipt of the request." (Motion at 6.) Although the parties are free to negotiate the terms of the Agreement, the Court is wary of the written request requirement. To ensure proper notice, the Court amends the Notice to (1) allow for oral requests and (2) provide both the Agreement and the Order to those who request either document.