1  MITCHELL KAMIN (SBN 202788)
2  mkamin@cov.com
   COVINGTON & BURLING LLP
3  1999 Avenue of the Stars
4  Los Angeles, CA 90067-4643
   Telephone: (424) 332-4800
5  Facsimile: (424) 332-4749

6
   CORENE T. KENDRICK (SBN 226642)
7  ckendrick@aclu.org
8  KYLE VIRGIEN (SBN 278747)
   kvirgien@aclu.org
9  AMERICAN CIVIL LIBERTIES UNION FOUNDATION
10 39 Drumm Street
   San Francisco, CA 94111
11 Telephone: (202) 393-4930
12 *Attorneys for Plaintiffs*

13 [Additional Counsel continued on next page]

14
                    **UNITED STATES DISTRICT COURT**
15                  **CENTRAL DISTRICT OF CALIFORNIA**
                         **EASTERN DIVISION**
16

17 | MELISSA AHLMAN, on behalf of | Civil Case No.: 8:20-cv-00835-JGB-SHK |
18 | themselves and all others similarly situated, | |
   | *et al.,* | **JOINT MOTION FOR FINAL** |
19 | | **APPROVAL OF SETTLEMENT** |
20 |       *Plaintiffs/Petitioners*, | |
21 | | Date: Sept. 12, 2022 |
   |       v. | Time: 9:00 a.m. |
22 | | Judge: Hon. Jesus G. Bernal |
23 | DON BARNES, in his official capacity as | |
   | Sheriff of Orange County, California; and | Action Filed:    April 30, 2020 |
24 | ORANGE COUNTY, CALIFORNIA. | |
25 | | |
   |       *Defendants/Respondents.* | |
26

27

28

1

[Additional Counsel continued from first page]

2

ANDREW LEFF
aleff@cov.com
LAURA BETH COHEN
lcohen@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5906

SOMIL TRIVEDI
strivedi@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, N.W.
Washington, D.C. 20005
Telephone: (202) 715-0802

PAUL HOFFMAN (SBN 71244)
hoffpaul@aol.com
JOHN WASHINGTON (SBN 315991)
jwashington@sshhlaw.com
SCHONBRUN, SEPLOW, HARRIS,
HOFFMAN & ZELDES LLP
11543 W. Olympic Blvd.
Los Angeles, CA 90064
Telephone: (310) 399-7040
Facsimile: (310) 399-7040

PETER ELIASBERG (SBN 189110)
peliasberg@aclu.org
ACLU OF SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-9500

3

4

5

6

7

8

9

10

11

12

13

14

15

ATTORNEYS FOR PLAINTIFFS

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Table of Contents**

I.   INTRODUCTION ........................................................................................ 1

II.  BACKGROUND ........................................................................................ 2

    A.   Procedural Background of The Case and Settlement........................... 2

    B.   Notice to Class Members and Class Members' Comments and
        Objections.......................................................................................... 3

III. SUMMARY OF KEY SETTLEMENT TERMS ........................................ 4

IV.  ARGUMENT.............................................................................................. 6

    A.   The Agreement is Fair, Reasonable, and Adequate. ........................... 6

    B.   The Risk, Expense, and Duration of More Litigation Favors Final
        Approval. ........................................................................................... 7

    C.   The Risk of Maintaining Class Action Status Throughout Trial Favors
        Approval. ......................................................................................... 10

    D.   The Amount Offered Favors Approval of the Agreement. ................ 10

    E.   The Extent of Discovery Completed and Stage of Litigation Favors
        Approval. ......................................................................................... 10

    F.   The Opinions of Counsel Favor Approval of the Agreement............ 11

    G.   Class Members' Reaction to the Proposed Settlement Favors Final
        Approval. ......................................................................................... 11

        1.   The Scope of the Agreement.................................................... 12

        2.   Transparency and Monitoring, and Allegations That Defendants
            Are Not Currently Complying With the Agreement. .............. 13

        3.   The Case Did Not Seek Monetary Damages. .......................... 14

        4.   The Fairness of the Attorneys' Fees Amount. ........................ 15

V.   CONCLUSION.......................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahlman v. Barnes*,
    20 F.4th 489 (9th Cir. 2021) ...................................................................... 2, 10

*Ahlman v. Barnes*,
    No. 20-55568, 2020 WL 3547960 (9th Cir. June 17, 2020) ................................ 2, 3, 15

*Arnold v. Ariz. Dep't of Pub. Safety*,
    No. CV-01-1463-PHX-LOA, 2006 WL 2168637 (D. Ariz. July 31, 2006) ........... 9, 10

*Barnes v. Ahlman*,
    140 S. Ct. 2620 (2020) .................................................................................... 2

*Bell v. Wolfish*,
    441 U.S. 520 (1979) ........................................................................................ 8

*Campbell v. Barnes*,
    Case No. 30-2020-01141117 (Orange County Super. Ct.) ................................ 5, 14, 15

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) .......................................................................... 6

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ......................................................................... 11

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ........................................................................................ 8

*Gordon v. County of Orange*,
    888 F.3d 1118 (9th Cir. 2018) ........................................................................ 8

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................*passim*

*Harris v. Vector Mktg. Corp.*,
    No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...................... 7

*Jeff D. v. Andrus*,
    899 F.2d 753 (9th Cir. 1989) .......................................................................... 6

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ........................................................................... 7

*Lewis v. Casey*,
  518 U.S. 343 (1996)........................................................................................... 9

*McGary v. City of Portland*,
  386 F.3d 1259 (9th Cir. 2004) ......................................................................... 8

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*,
  688 F.2d 615 (9th Cir. 1982) ...................................................................... 6, 7

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ........................................................................... 11

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ........................................................................ 8, 9

*Pride v. Correa*,
  719 F.3d 1130 (9th Cir. 2013) ...................................................................... 14

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................... 10, 11

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ........................................................................ 6

*Youngberg v. Romeo*,
  457 U.S. 307 (1982)........................................................................................... 8

**Statutes**

42 U.S.C. § 1983 .................................................................................................. 14

42 U.S.C. § 12131 *et seq.*................................................................................... 2, 8

Prison Litigation Reform Act, 18 U.S.C. § 3626 *et seq.* ...................... 1, 2, 9, 15

Rehabilitation Act, 29 U.S.C. § 794 *et seq.* .................................................... 2, 8

**Other Authorities**

28 C.F.R. § 35.102(a)............................................................................................ 8

28 C.F.R. § 35.130 ................................................................................................ 8

JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT

Fed. R. Civ. P. 1 ........................................................................................... 9, 10

Fed. R. Civ. P. 23(e) ........................................................................... 1, 6, 10, 11, 15

iv

# I.    INTRODUCTION

After extensive arms'-length negotiations mediated by Magistrate Judge Shashi H. Kewalramani over a period of months, the Plaintiff Class and Defendants County of Orange and Sheriff Don Barnes (collectively, the "Parties") reached a proposed settlement of this action. *See* Doc. 237-1. The Court granted preliminary approval of the Settlement Agreement ("Agreement") on July 7, 2022, and set a hearing on final approval for September 12, 2022. Doc. 245. The Parties, by and through their counsel, now request final approval of the Agreement.[1]

The Agreement is fair, reasonable, and adequate, as required by Rule 23(e) of the Federal Rules of Civil Procedure. If the Court grants final approval, the Agreement will resolve all class claims in the case. There is no evidence that the Agreement will fail to achieve the objectives of the class claims for injunctive relief. Plaintiffs' counsel will monitor continued implementation of remedial efforts to enforce the terms of the Agreement, and the Court will retain ongoing jurisdiction over the Agreement for its duration.[2]

The Court should grant final approval of this settlement.

---

[1]    Concurrent to the filing of this Motion, Plaintiffs are separately filing an unopposed motion for agreed-upon attorneys' fees.

[2]    Pursuant to the Agreement, the Parties request that for purposes of jurisdiction and enforcement that the Court find that the Agreement complies in all respects with the PLRA, 18 U.S.C. § 3626 *et seq.*, in that it is narrowly drawn, extends no further than necessary to correct the violation of a federal right, is the least intrusive means necessary to correct the violation of federal rights of the Plaintiffs, and that the Court has the authority and sufficient record to enter and approve the Agreement. Doc. 237-1 at 1-2.

Notwithstanding the Agreement, Defendants deny liability; reject all allegations in the Complaint; assert they are providing and have provided adequate conditions of confinement to detainees and have never engaged in practices that discriminate against persons with disabilities; and assert that the Agreement shall not be construed in any way to be an admission in any other claim, action, or lawsuit against Defendants. *Id.* at 1, 2.

1

## II.    BACKGROUND

### A.    Procedural Background of The Case and Settlement.

Plaintiffs, for themselves and proposed classes of people who are or will be confined at the Orange County Jail ("Jail"), filed a complaint on April 30, 2020, alleging that the fact and conditions of their confinement violated their rights under the Eighth and Fourteenth Amendments of the U.S. Constitution, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*., and the Rehabilitation Act ("RA"), 29 U.S.C. § 794 *et seq.* Doc. 1. Plaintiffs alleged that detainees were at substantial risk of serious harm if infected with COVID-19, and sought injunctive and declaratory relief to remedy the alleged violations. *Id*.

The Court partially granted Plaintiffs' application for a temporary restraining order and preliminary injunction on May 26, 2020, and preliminarily certified classes and subclasses. Doc. 65. Defendants sought a stay and appealed the denial of their stay request and the preliminary injunction order separately to the Ninth Circuit, which denied Defendants' motion for a stay. *See Ahlman v. Barnes*, No. 20-55568, 2020 WL 3547960, at *5 (9th Cir. June 17, 2020). In August 2020, the U.S. Supreme Court, without a written majority opinion, granted Defendants' emergency application for a stay of the preliminary injunction pending its appeal. *Barnes v. Ahlman*, 140 S. Ct. 2620, 2620 (2020).

Discovery began during the summer of 2020. The Parties took depositions and propounded document requests and interrogatories. Defendants moved to dismiss on July 19, 2021, and for a stay of discovery on August 13, 2021. Docs. 171 & 177. The Court denied these motions on September 17, 2021. Doc. 189. On December 10, 2021, the Ninth Circuit dismissed as moot Defendants' appeal of the preliminary injunction, because it had expired on August 26, 2020, pursuant to the plain language of the Prison Litigation Reform Act ("PLRA"). *Ahlman v. Barnes*, 20 F.4th 489, 495 (9th Cir. 2021).

In January 2022, the Parties agreed to stay discovery, so that they could try to settle the case. Over four months, the Parties and their attorneys engaged in many days of arms'-

length negotiations, including multiple days of mediation led by Judge Kewalramani. On May 11, 2022, the Parties agreed to Judge Kewalramani's proposed Agreement to resolve the case. Doc. 237-1 at 2. On May 31, 2022, the Parties filed a joint motion for preliminary approval of the settlement, including the proposed notice ("Notice") to the class. *See* Doc. 237 *et seq*. Plaintiffs filed an unopposed motion to certify a settlement class. *See* Doc. 236 *et seq*. On July 7, 2022, the Court certified the settlement class, and preliminarily approved the Agreement. Doc. 245.

**B.    Notice to Class Members and Class Members' Comments and Objections**

In its preliminary approval order, the Court modified the Parties' proposed procedure that the Notice and the Agreement be posted in all dayrooms, housing areas, and next to all phones accessible to detainees, (Doc. 237-1 at ¶ E.3), to additionally require that if any class member requested either in writing *or* orally, a copy of the Agreement *or* the Preliminary Approval Order, that a full copy of *both* documents be provided within 24 hours of the detainee's request. Doc. 245 at 10, n.2. Class members were directed by the Court and in the Notice to either register their comments and objections telephonically by leaving a voice mail with Plaintiffs' Counsel on their jail hotline, or with the Court in writing within 14 days of the posting of the Notice. *Id*. at 7.

On July 6, 2022, Plaintiffs' counsel filed with the Court transcriptions of 41 separate messages left by 25 class members between July 10 and July 24, 2022, and a message left by Named Plaintiff Daniel Kauwe, who anticipated that he would not be able to attend the final approval hearing on September 12. Docs. 249 ¶ 7, 249-1, 249-2. On July 29, 2022, the Clerk of the Court filed on the docket the written comments received by the Court during the Notice period from ten class members. *See* Docs. 251-270. On July 26, after Plaintiffs submitted the transcribed objections, Plaintiffs' counsel received information that a detainee requested a copy of the Agreement during the Notice period but was not given a copy in time to object. Plaintiffs' counsel investigated this issue and brought it to the attention of Defendants and Defendants' counsel. Defendants investigated the

issue and confirmed that the Notice had been posted in the relevant areas per the Court's order but agreed to allow late comments from these detainees who purportedly requested the Agreement during the Notice period but did not receive it. *See* Doc. 275; *see also* Declaration of Kayla Watson filed hereto ("Watson Decl.") ¶ 7.

### III.    SUMMARY OF KEY SETTLEMENT TERMS

The Court's preliminary approval order and the Parties' Joint Motion for Preliminary Approval summarize the terms of the Agreement in detail. *See* Doc. 237 at 5-6, Doc. 245 at 5-6.  In brief, the Agreement provides that the Jail will operate consistent with applicable COVID-19 guidance for correctional facilities issued by the U.S. Centers for Disease Control and Prevention ("CDC"), the relevant orders from the California Department of Public Health ("CDPH"), or any other governing agency related to COVID-19 and applicable in correctional facilities. Doc. 237-1 ¶¶ A.2, A.4, A.7, F.2. This includes free vaccinations, therapeutic medications, and testing; accessible patient education materials and incentives for class members to be fully vaccinated; and transfer to outside health care providers. *Id*. ¶¶ A.25-27, F.4, G, M. Defendants agreed to provide detainees access to personal hygiene supplies, soap, sanitizer, masks, and other personal protective equipment. *Id*. ¶¶ F.5-6, I.1-2. Defendants also agreed to provide class members access to the Jail's chow hall and to ensure delivery of hot food trays in compliance with Title 15, Section 1240 of the California Code of Regulations. *Id*. ¶ F.7.

The Agreement also sets forth the process for testing, quarantine, and isolation periods for class members, including identifying people who have health conditions that make them vulnerable to a higher risk of death or serious permanent injury due to infection; and the non-punitive operation of isolation / quarantine units, including these class members' out-of-cell time and access to books, reading materials, TV, showers, telephones, and personal items and commissary similar to what class members in regular housing have access to. Doc. 237-1 ¶¶ A.17-18, A.21, A.25, J. Defendants agreed to maintain the Jail's population density and levels as recommended by the Jail's Medical

4

Director and applicable CDC / CDPH guidance, and to make reasonable efforts to ensure that people are able to physically distance from others. *Id*. ¶ L.

Under the terms of the Agreement, in June 2022 Defendants began to provide Plaintiffs' counsel weekly data reports that, among other things, detail the rates of testing, infection, hospitalization, quarantine/isolation, and vaccination of detainees; as well as testing and infection rates for Jail staff, Doc. 237-1 ¶¶ O.1-2. Class counsel may request video footage or Inmate Activity Logs if they receive reliable information related to noncompliance with the Agreement. *Id.* ¶ O.3.

The Agreement will terminate upon the occurrence of any of the following, whichever occurs first: (a) the lifting of the State of California's March 4, 2020 Emergency Proclamation Regarding COVID-19; (b) the CDPH announcing the State of California to be in an endemic state regarding COVID-19; (c) six (6) months after the Court's final approval of the Agreement; or (d) February 1, 2023, unless any motion is still pending before the court. Doc. 237-1 ¶ P. Defendants agreed to pay Class Counsel and Munger, Tolles & Olson, LLP the total sum of $3,700,000 in attorneys' fees and costs in complete resolution of this matter and *Campbell v. Barnes*, Case No. 30-2020-01141117 (Orange County Super. Ct.). Doc. 237-1 ¶¶ A.3, D.1.[3]

The Parties stipulated to the retention of jurisdiction by the Court for the term of the Agreement, and that all disputes regarding its enforcement shall be addressed via a dispute resolution process by Judge Kewalramani. Doc. 237-1 ¶¶ B, P, Q. The Parties agreed that the Agreement satisfies not only the litigation before this Court, but any pending appeals or petitions for review of this case or *Campbell*. *Id.* ¶¶ A.1, A.3, S.1. The Agreement is intended to fully resolve, discharge, and settle the claims in this lawsuit, subject to the Court's approval. *See id.* ¶¶ C, R.

---

[3]    Plaintiffs' unopposed Motion for Fees details the Superior Court's order awarding fees in *Campbell*, as well as the Parties' fee agreement and negotiations.

# IV.   ARGUMENT

## A.   The Agreement is Fair, Reasonable, and Adequate.

There is a "strong judicial policy" that favors the settlement of class actions. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). "[S]ettlement [is] the preferred means of dispute resolution" and that "is especially true in complex class action litigation." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). "The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).

The Ninth Circuit has instructed district courts to consider and balance multiple factors when assessing the fairness of a case's settlement, including,

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citations omitted). These factors are "non-exclusive." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 n.7 (9th Cir. 2004).

Additionally, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness," and the district court cannot "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026 (citations omitted); *see also Jeff D. v. Andrus*, 899 F.2d 753, 758 (9th Cir. 1989) ("[C]ourts are not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties."). Finally, "the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the

question whether the settlement is perfect . . ." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citing *Hanlon*, 150 F.3d at 1027).

Courts must give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*. (quoting *Officers for Justice*, 688 F.2d at 625). In reviewing a class action settlement agreement, there is an initial presumption of fairness when a proposed settlement was negotiated at arms' length by counsel for the class. *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). Moreover, as this Court noted in its preliminary approval order, the Parties' use of Judge Kewalramani as their mediator also tends to establish that the settlement process was not collusive. *See* Doc. 245 at 9 (citing *Satchell v. Fed. Ex. Corp.*, Nos. C03–2659 SI, C 03–2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

The Agreement should be approved when considering the applicable *Hanlon* factors because it provides substantial equitable relief to class members. The Parties have agreed to settlement terms that directly address the class claims in this case.

**B.    The Risk, Expense, and Duration of More Litigation Favors Final Approval.**

Courts should evaluate the strength of the plaintiffs' claims and likelihood of success at trial, along with the risk, expense, and duration of more litigation, when determining if settlement is fair to a class. *Hanlon*, 150 F.3d at 1026. But the Court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of the outcome of litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625; *see also Hanlon*, 150 F.3d at 1026.

Plaintiffs' complaint raised five claims under the Eighth and Fourteenth Amendments, and under federal disability rights law. Under the Fourteenth Amendment, jail officials must provide pretrial detainees with reasonable health and safety protections, and detainees may not be punished as part of their detention. *Youngberg v. Romeo*, 457 U.S. 307, 315-16, 324 (1982) (holding there is an "unquestioned duty" to "provide adequate . . . medical care" for detained persons); *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). Plaintiffs would have had to show at trial that Defendants were objectively deliberately indifferent to the serious risk of COVID-19 in violation of the Fourteenth Amendment. *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). For post-conviction Class members, Plaintiffs would also have to show subjective deliberate indifference in violation of the Eighth Amendment, Defendants' knowledge that these detainees "face a substantial risk of serious harm" and Defendants' disregard of "that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847-48 (1994). Plaintiffs would also have to show that the systemwide substantial risk of harm "can be alleviated for every class member by uniform changes in [Defendants'] policy and practice." *Parsons v. Ryan*, 754 F.3d 657, 689 (9th Cir. 2014). Finally, Plaintiffs would have to show at trial that Defendants failed to make reasonable accommodations to protect disabled class members and that they were unable to participate in all programs, benefits, and services on an equal basis with non-disabled class members.[4] *See* 28 C.F.R. §§ 35.102(a), 35.130(a), and (b); 29 U.S.C. § 794 *et seq.*; *McGary v. City of Portland*, 386 F.3d 1259, 1265-66 (9th Cir. 2004).

While Plaintiffs believe they had sufficient evidence to prevail at trial, there always is a risk that evidence could be excluded, or that the fact-finder would not find the evidence

---

[4]    Plaintiffs would further have to prove that certain Class members are disabled within the meaning of the ADA and Section 504 of the RA and that certain Class members are Medically Vulnerable and have a higher risk of severe illness or death from COVID-19.

compelling enough to meet the legal standards of proof for Plaintiffs' claims. As this Court noted, Plaintiffs faced challenges in marshalling evidence. Doc. 189 at 5 ("It is [] not lost on the Court that, as between the parties, only Defendants have steady access to facts, statistics, and data descriptive of the Covid-19 risks present in the Orange County Jail . . .").

Most critically, the duration and expense of continued litigation weighs heavily in favor of approving the Agreement. Had the case gone to trial, and Plaintiffs prevailed on all claims, the time to actually implement changes in Defendants' policies and practices would have taken much longer than what has occurred and will occur under this Agreement. A full trial, which had not been scheduled when mediation began, would have taken weeks, with testimony from both experts and incarcerated people. The Court would then need time to digest all the evidence and draft and issue its finding of facts and conclusions of law. If the Court found for Plaintiffs, it would need time to make an order regarding the proper scope of relief. And, under precedent and the PLRA, the Court would have had to give Defendants the first opportunity to propose remedies addressing the Court's findings of constitutional violations. *See Lewis v. Casey*, 518 U.S. 343, 362 (1996) ("[C]onsiderations of comity . . . require giving the States the first opportunity to correct the errors made in the internal administration of their prisons.") (citation omitted); *Parsons*, 754 F.3d at 689 n.35 (noting that defendant "officials must play a role in shaping injunctions."). It could take months for Defendants to develop a plan and submit it to the Court for approval and to Plaintiffs for comments. It would take more time for the Court to review the proposed plan and to issue a final order directing Defendants to implement their plan. Defendants would also have the opportunity to seek a stay pending appeal, which if granted, could delay relief for years.

These *Hanlon* factors all weigh strongly in favor of final approval of the Agreement. *See* Fed. R. Civ. P. 1 (encouraging the "just, speedy, and inexpensive determination of every action"); *see also Arnold v. Ariz. Dep't of Pub. Safety*, No. CV-01-1463-PHX-LOA, 2006 WL 2168637, at *8 (D. Ariz. July 31, 2006) (in evaluating the fairness of an injunctive

9

civil rights settlement, a court should consider Rule 1 as well as the "size of the proposed class, the significant cost of continued litigation, and the inordinate delay that has already occurred."). Given the relief achieved for the Plaintiff class, and the risks and costs of further litigation, the Agreement represents a fundamentally "fair, reasonable, and adequate" resolution of the disputed issues. Fed. R. Civ. P. 23(e)(2).

## C.   The Risk of Maintaining Class Action Status Throughout Trial Favors Approval.

The risk that a class action may be decertified at any time generally weighs in favor of approving a settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). This Court provisionally certified a class in May 2020 for the purpose of granting preliminary injunctive relief. Doc. 65. In December 2021, the Ninth Circuit vacated this provisional class certification as moot, when it ruled that the Defendants' appeal of this Court's preliminary injunction was moot. *Ahlman*, 20 F.4th at 495. The Parties litigated this action and treated it as a class action throughout, but if they had not settled, and litigation and discovery had resumed, Plaintiffs would have had to relitigate class certification, and likely would have faced opposition.

This *Hanlon* factor also weighs in favor of final approval of the Agreement.

## D.   The Amount Offered Favors Approval of the Agreement.

Plaintiffs did not seek monetary damages; the purpose of bringing suit was to obtain injunctive relief to correct alleged constitutionally deficient conditions in the Jail. The Court should find that the Agreement, by its terms, resolves Plaintiffs' injunctive relief claims and provides the more than 3,000 class members with the injunctive relief originally sought. Defendants will have to "dedicate human and financial resources" to comply with the Agreement, (*see Arnold*, 2006 WL 21683637, at *8), a *Hanlon* factor that weighs in favor of approval of the Agreement.

## E.   The Extent of Discovery Completed and Stage of Litigation Favors Approval.

Looking at the next *Hanlon* factor, this matter has been litigated for almost two years.  Plaintiffs opposed two motions to dismiss, and the parties engaged in extensive

10

discovery. At the time of the mediation in early 2022, the Parties had spent more than 18 months engaged in discovery practice. And while the Court had not issued a final scheduling order for trial, "[e]xtensive discovery had been conducted," and as a result of the stage of the case at the time of negotiations, this factor also weighs in favor of approval of the Agreement. *Rodriguez*, 563 F.3d at 967.

**F.    The Opinions of Counsel Favor Approval of the Agreement.**

Another factor to be considered is the experience of counsel who determined that settlement was appropriate. The Ninth Circuit has held that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Plaintiffs' class counsel from the ACLU National Prison Project are lead counsel in this case, and led the negotiation of the settlement of the case. They, and the attorneys who work with them, have considerable expertise in the applicable area of the law related to incarcerated people and in litigating similar actions. Declaration of Corene Kendrick filed hereto ("Kendrick Decl.") ¶ 9. Plaintiffs' counsel from ACLU of Southern California and Covington & Burling also participated in the mediation and settlement negotiations, and have broad experience in litigating and settling complex civil rights suits. *Id*; Declaration of Mitch Kamin filed hereto ("Kamin Decl.") ¶ 6. Defendants' counsel are experienced in defending the County and Sheriff Barnes in federal court litigation. Watson Decl. ¶ 3.

Therefore, this *Hanlon* factor also weighs in favor of approval of the Agreement.

**G.    Class Members' Reaction to the Proposed Settlement Favors Final Approval.**

When determining if a settlement is fair under Rule 23(e), the Court may consider the responses of class members after they were given proper notice and the chance to comment on the settlement. *Hanlon*, 150 F.3d at 1026. The Court should "give a reasoned response to all non-frivolous objections" raised by class members. *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted).

JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT

In this case, 54 comments were provided to the Court by 33 class members, out of a class of more than 3,200 people living in the jail. *See* Docs. 249-1, 249-2, 251-270, 275.[5] This is about one percent of class members commenting, objecting, or expressing reservations related to the settlement. The comments can be grouped into several broad categories:

(1)  The scope of the Agreement, including provisions that class members thought should have been included;

(2)  Class members' concerns about transparency and the compliance monitoring process, including allegations that Defendants are not complying with the Agreement;

(3)  Class members' belief that the case should have sought monetary damages; and,

(4)  The fairness of Plaintiffs' counsel's attorneys' fees and costs.

## 1.    The Scope of the Agreement.

Some class members expressed a belief that the Agreement does not go far enough to address deficiencies in the COVID-19 response. But as the Ninth Circuit observed, this alone is not a basis for rejecting a settlement:

> Of course, it is possible, as many of the objectors' affidavits imply, that the settlement could have been better. But this possibility does not mean the settlement presented was not fair, reasonable or adequate. Settlement is the offspring of compromise; the question we address is not whether the final product could have been prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.

*Hanlon*, 150 F.3d at 1027.

Class members' comments identified other matters that they believed should have been included in the litigation or settlement. For example, one class member reported that clothing provided to detainees is not the correct size and worn out, and there is dust in the

---

[5]    This count does not include one class member who did not identify himself when leaving a message with Plaintiffs' counsel or two comments made after the deadline but filed with the stipulation of the parties.

air. Doc. 262 at 6. Another class member reported being treated poorly by custody officers and having an altercation with other incarcerated persons. Doc. 249-1 at 52-53.[6] One expressed his fear of eating meals because of the belief that the kitchen workers might contaminate the food. *Id*. at 33-34. Three people reported problems with getting time credits or pay for work. *Id*. at 42, 53-55; Doc. 252. Another class member stated he needs more stamps so that he can litigate his criminal case. Doc. 249-1 at 14. These issues are outside the ambit of the Agreement and beyond the scope of Plaintiffs' claims.

### 2. Transparency and Monitoring, and Allegations That Defendants Are Not Currently Complying with the Agreement.

Some comments related to Class members' concerns related to Defendants' transparency about conditions in the Jail, and monitoring Defendants' compliance with the Agreement's terms. *See, e.g*., Doc. 260 at 1 (opposing approval until a "watch dog agency" investigates the Sheriff's Department and the County "remove[s] their hiring freeze and continue hiring and replace the former OC OIR Director"); Doc. 264 at 2 (concern that without outside pressure from the ACLU or the health department, that conditions will "slowly go back to unsatisfactory"); Doc. 270 at 2 (opinion that there should be "quarterly federal inspections" to ensure compliance). Class members reported an inability to get a copy of the Agreement, or that it took longer than 24 hours to receive a copy of it after numerous requests. Doc. 249-1 at 37, 43.

Others reported that Defendants were not currently complying with the Agreement. For example, one class member noted that there are not enough nurses working at the Jail, and they are understaffed. Doc. 249-1 at 24-25. Several class members reported problems with being properly socially distanced during transportation to and from court. Doc. 262 at 4; *see also* Doc. 249-1 at 31 (reporting no out-of-cell time for ten days in quarantine in

---

[6]    Citations to specific page numbers of Doc. 249-1 are to the page numbers assigned by the Court's Electronic Case Filing (ECF) system, and not to the pagination of the documents therein.

July); *id.* at 47 (reporting limited out of cell time and lack of sanitation); *id.* at 2, 5, 50, 59 (no or little hand sanitizer); *id*. at 3, 35, 37, 38 (not receiving hot meals); *id.* at 58, 59, Doc. 258 (hygiene supplies); *id.* at 58 (no testing); Doc. 249-2 (housing units not kept at densities where people can safely socially distance);; Doc. 260 at 2 (showers not cleaned and shared by many men); Doc. 262 at 6 (reporting crowded cells and failure to provide new clean masks).

In response to these concerns, Defendants reviewed each comment submitted by class members, investigated the claims made therein, and confirmed that all terms of the Agreement were being complied with. Watson Decl. ¶ 6. Moreover, Plaintiffs' counsel will monitor compliance through their Jail hotline, interviews with class members, make inquiries with Defendants and Defendants' counsel when necessary, review documents provided under the Agreement, bring allegations of violations to the attention of Defendants' counsel and will pursue relief with this Court pursuant to the Agreement if necessary.

### 3. The Case Did Not Seek Monetary Damages.

A significant number of the comments were from class members who believed that they should have received monetary compensation as part of the Agreement for an alleged failure to protect them from COVID-19. *See, e.g*., Doc. 249-1 at 2, 5, 8, 10, 19-20, 24-28, 32, 40, 44-45, 51; Doc. 266; Doc. 268. Ninth Circuit precedent holds that a settlement agreement for injunctive relief for a class of prisoners does not bar a non-named Plaintiff class member from bringing an individual case under 42 U.S.C. § 1983 litigating similar violations. *See Pride v. Correa*, 719 F.3d 1130, 1137 (9th Cir. 2013). Class members are thus free to file their own individual cases in state or federal court seeking money damages against Defendants.[7]

---

[7] One class member objected to the Agreement's provision that the Parties will withdraw any pending appeals, including in *Campbell v. Barnes*, on the basis that it would

### 4. The Fairness of the Attorneys' Fees Amount.

Likewise, class members submitted comments related to the agreed-upon amount of the Plaintiffs' attorneys' fees.[8] As detailed in Plaintiffs' Unopposed Motion for Fees, the vast majority of the agreed-upon amount ($2,985,071.61 of $3.7 million) was the reduced amount ordered by Orange County Superior Court Judge Peter Wilson in *Campbell v. Barnes*. *See* Doc. 237-1 at ¶ D; Forthcoming Fees Mot. at 6 & n.2. The remaining $714,928.39, is for Plaintiffs' counsel's attorneys' fees and costs in *Ahlman v. Barnes*, a reduction of more than 60% from the gross amount incurred in this case, and was calculated at the capped PLRA hourly rate of $232.50 for all attorneys. Forthcoming Fees Mot. at 7.

## V. CONCLUSION

For the foregoing reasons, the Parties jointly and respectfully request that the Court issue final approval of the Agreement, including the agreed-upon attorneys' fees and costs, and issue an order finding the Agreement is fair, reasonable, and adequate as required by Rule 23(e) of the Federal Rules of Civil Procedure.

The Parties' proposed order is submitted with this motion.

Dated: August 22, 2022                    Respectfully submitted,

                                          AMERICAN CIVIL LIBERTIES UNION
                                          FOUNDATION

                                          By:    /s/ Corene T. Kendrick
                                          Corene T. Kendrick

---

"improperly inoculate the defendants" from review by the California Court of Appeals. Doc. 262 at 2. However, this misappraises the procedural posture of that case, as the appeal was brought by Defendants, not Plaintiffs. This same class member separately contacted Plaintiffs' counsel to express his concern that the Agreement would exclude pre-trial detainees, Doc. 249-1 at 22, but again this is a mistaken belief, as the class certified by the Court for purposes of the settlement includes *all* persons who are or will be incarcerated in the Orange County Jail.

[8]    *See, e.g*., Doc. 249-1 at 24-28, 31-32, 44-46; Doc. 268 (Bernard Basinger); Doc. 254 at 2-3 (Christopher Herbstritt).

1    Attorneys for Plaintiffs

2

3    Dated: August 22, 2022        LEON J. PAGE, COUNTY COUNSEL

4                                  COUNTY OF ORANGE

5                                  By:    /s/ Kayla N. Watson

6                                  Kayla N. Watson, Deputy County Counsel
                                   Attorneys for Defendants
7

8              **ATTESTATION REGARDING SIGNATORIES**

9        I, Corene T. Kendrick, hereby attest that Counsel for Defendants concur in the

10   filing's content and have authorized the filing.

11       Executed on August 22, 2022 at San Francisco, California.

12

13                                 By:    /s/ Corene T. Kendrick

14                                 Corene T. Kendrick
                                   American Civil Liberties Union Foundation
15

16

17

18

19

20

21

22

23

24

25

26

27

28